**McELROY, DEUTSCH, MULVANEY & CARPENTER, LLP**
**1300 Mount Kemble Avenue**
**P.O. Box 2075**
**Morristown, New Jersey  07962-2075**
**Attorneys for Defendant,**
**Hillstone Restaurant Group,**
**D/B/A/ Houston's**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| BRIAN PIETRYLO, et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>HILLSTONE RESTAURANT GROUP<br>D/B/A HOUSTON'S,<br><br>Defendant. | Hon. Faith R. Hochberg, U.S.D.J.<br>Hon. Patty Shwartz, U.S.M.J.<br><br><br>CIVIL ACTION NO. 06-5754 (FSH)<br><br><br>**FINAL PRETRIAL ORDER**<br><br>Document Filed Electronically |

This matter having come before the Court for a pretrial conference pursuant to

Fed.R.Civ.P. 16; Fred Pisani, Esq., of Ramp & Pisani, LLP, having appeared for plaintiff(s) and

Donna duBeth Gardiner, Esq., of McElroy, Deutsch, Mulvaney & Carpenter, LLP, having

appeared for defendant(s); and counsel all having been notified that:

(1) a _____ jury _____ trial in this matter has been scheduled before Hon, Faith S. Hochberg

on March 17, 2009.

(2) the pretrial submissions detailed in ¶¶ 2, 18 and 19 below are to be submitted no later

than 2/27/09 or they will be deemed waived; and

(3) a pretrial housekeeping conference is scheduled before Hon Faith S.. Hochberg

on To be set   the following Final Pretrial Order is hereby entered:

1.   **JURISDICTION (Set forth specifically)**

The Court has original jurisdiction pursuant to 28 U.S.C. 1331 and 18 U.S.C. 2701 - 2711.

The Court has supplemental jurisdiction over state claims pursuant to 28 U.S.C. 1367.

2.   **PENDING/CONTEMPLATED MOTIONS/TRIAL BRIEFS (Set forth all pending or contemplated motions, whether dispositive or addressed to discovery or the calendar. Also set forth the nature of the motion and the return date, If the Court indicated that it would rule on any matter at pretrial, summarize that matter and each party's position.**

**NOTE: ALL REMAINING PRE-TRIAL MOTIONS INCLUDING DAUBERT AND IN LIMIINE MOTIONS SHALL BE FILED NO LATER THAN** 2|27|09 **, and any response shall be submitted no later than** 3|6|09 **. Only those motions listed herein will be entertained prior to trial.**

A.   **Plaintiff:**

~~None~~ 1. Motion to require the defendant to produce Messrs. Cambriello and Lamb via notice as opposed subpoena.

B.   **Defendant:**

1.   Motion to bar use of Certification of Karen St. Jean. defendant motion is moot as certification or its contents will not be offered at trial

2.   Motion to bar plaintiffs' claims for economic losses due to plaintiff's failure to provide tax returns, W-2s or other proof of income for 2007 and 2008. These documents shall be produced by March 2, 2009 or they may not be introduced into evidence

3.   Motion to strike jury demand as not permitted by the statutes at issue.

4.   Motion to strike common law claims and emotional distress claims as preempted by the exclusive remedies and sanctions provisions of the Stored Communications Act , 18 U.S.C. §2008, and the New Jersey Wiretapping and Electronic Surveillance Control Act, 2A N.J.S.A. 156A-34,.. The defendant is on notice that this may be ~~motion~~ waived for failing to raise as part of the summary judgment

3.   **STIPULATION OF FACTS (Set forth in narrative form a comprehensive listing of all uncontested facts, including all answers to interrogatories and admissions, to which there is agreement among the parties)**

1.      Defendant Hillstone Restaurant Group, d/b/a Houston's ("Defendant" or "Houston's") owns and operates a variety of restaurants in locations around the United States, among them Houston's restaurants ("Houston's") including the Houston's at Riverside Square in Hackensack, New Jersey.

2.      Houston's hired plaintiffs Brian Pietrylo ("Pietrylo") and Doreen Marino ("Marino") to work as servers at the Riverside Square restaurant in or about March 2004.

3.      Plaintiffs were living together during the time they were employed by Houston's.

4.      In early March 2006, plaintiff Pietrylo created a group on "myspace.com" called "The Spec-Tator." Pietrylo maintained The Spec-tator and both Pietrylo and Marino added postings during non-work hours. Pietrylo designated The Spec-tator as "private membership" and described the group as "A place for those of us at Riverside to talk about all the crap/drama/and gossip occurring in our workplace, without having to worry about outside eyes prying in . . . but because this group is oh so private, only participants will stay members. Past and present employees welcome."

5.      The name, "The Spec-tator" was a parody of the specifications or "specs" that Houston's had established for quality and customer service in all of its restaurants.

6.      Other Houston's employees who were also members of "myspace.com" were invited by Pietrylo to join The Spec-Tator. He accomplished this by sending them an email with a link to The Spec-Tator. Once an invitee "accepted" the invitation by clicking on the link, a permanent gateway to The Spec-Tator would be located on each invitee's own personal myspace.com home page. The symbol for the link to The Spec-Tator was the Houston's trademarked logo which Pietrylo had copied from Houston's website and used without permission.

Each invitee who joined The Spectator could access the site whenever they wished to either read postings from other members or to add postings of their own.

       7.     Karen St. Jean, a greeter at Houston's, was invited to join The Spec-Tator by Pietrylo and was an authorized user.  Pietrylo did not invite Houston's managers including Robert Anton, nor the upper management, including Rob Marano, Regional Supervisor, Tino Ciambriello, V.P. of Operations, and Michael Lamb, Director of Human Resources.

       8.     Karen St. Jean showed The Spec-Tator to one of the managers at Houston's, TiJean Rodriquez during a social gathering at his home.

       9.     TiJean Rodriquez read some of the postings made by employees of Houston's.

      10.     Robert Anton, one of the manager's at Houston's, who was working at the time, asked Karen St. Jean, who was working one of her shifts, for her myspace.com sign-on information so that he could look at The Spec-Tator and she gave him her email address and password to her myspace.com site which, in turn, gave him access to The Spec-Tator.  After viewing The Spec-Tator, he made hard copies of some of the postings.

      11.     Karen St. Jean knew that Anton would access The Spec-Tator when she provided her log-in information, password and instructions on how to access the site.

      12.     When she gave Anton her log-in information and password, she expected he would share information from The Spec-Tator with other Houston's managers.

      13.     Anton brought the site to the attention of Robert Marano ("Marano"), a regional supervisor of operations for Houston's.

      14.     When Marano came into possession of St. Jean's email address and password, he reviewed The Spec-Tator and its contents.  He was concerned because he believed

that The Spec-Tator was damaging to everything that the restaurant management and the company is trying to achieve. He believed that this would affect the operations of the Riverside Square Houston's. Marano sent an email to Tino Ciambriello and Michael Lamb with St. Jean's email address and password and explained how to access The Spec-Tator. After consulting with senior management within the Hillstone Restaurant Group, Marano made the decision to terminate the employment of Pietrylo and Marino.

15.     Pietrylo was terminated on May 9, 2006, and Marino was terminated on May 10, 2006.

16.     Plaintiffs were at-will employees.

**4.     JUDICIAL NOTICE**

**A.  Plaintiff requests that the Court take judicial notice of the following facts:**

None

**B.  Defendant objects to the taking of judicial notice for the following reasons:**

N/A

**5.     JUDICIAL NOTICE**

**A.     Defendant requests that the Court take judicial notice of the following facts:**

1.     Under the Stored Communications Act, and its New Jersey counterpart, access is not unlawful if permission was given "by a user of that service with respect to a communication of or intended for that user." 18 U.S.C. § 2701(c)(2); accord N.J.S.A. 2A:156A-27c(2).

*[handwritten margin note: Defendant expresses this to an issue of law & not the subject of judicial notice]*

**B. Plaintiff objects to the taking of judicial notice for the following reasons:** *[handwritten: None because this is an issue of law]*

No judicial notice should be taken. This is an issue of fact to be determined by the trier of fact per Judge Hochberg's rulings on defendant's summary judgment motion and reconsideration motion

**6.    PLAINTIFF'S CONTESTED FACTS (Stated separately for each defendant. Proof shall be limited at trial to the matters set forth below, Failure to set forth any matter shall be deemed a waiver thereof)**

   **A.  Plaintiff intends to prove the following contested facts with regard to liability:**

(1)  Karen St. Jean did not voluntarily provide her password and email to Robert Anton.  He told her to give it to him while she was working and he was acting as her supervisor.  She only gave it to him because he asked for it as her manager.  She thought something would happen to her if she did not give it to him.

(2)  Karen St. Jean did not consent to and/or authorize that Rob Marano, Tino Ciambriello and Michael Lamb, all members of upper management, use her email address and password to access "The Spec-tator."

(3)  "The Spec-tator" was a private group not openly accessible to the public, including Houston's management.

(4)  Brian Pietrylo and Doreen Marino had a reasonable expectation of privacy with regard to the access to "The Spec-tator".

(5)  Brian Pietrylo and Doreen Marino had a reasonable expectation of privacy with regard to the postings read and made on "The Spec-tator".

(6)  Defendant invaded Brian Pietrylo and Doreen Marino's right to privacy in the manner by which they accessed "The Spec-tator".

(7)  Defendant invaded Brian Pietrylo and Doreen Marino's right to privacy in the manner in which they read and copied and continued to access "The Spec-tator".

(8)  Defendants wrongfully terminated Brian Pietrylo and Doreen Marino by invading their privacy in violation of a clear mandate of public policy.

   **B.  Plaintiff intends to prove the following contested facts with regard to damages: (This must include each item of damages, the amount of each item, the factual basis for each item and, if punitive damages are claimed, the facts upon which plaintiff will rely to establish punitive damages.)**

   1.    Brian Pietrylo

         Compensatory damages

Lost Wages

Based upon a comparison of his W-2's, 1099's, and tax returns

Lost future wages

See above documents

Award for emotional distress damages.

Mr. Pietrylo and his psychiatrist, Sidney B. Heimbach, M.D., will testify that his increased anxiety and depression, which included him cutting himself, were, at least, partly caused by his termination.

2.      Doreen Marino

Compensatory damages

Based upon a comparison of her W-2's, 1099's, and tax returns

Lost future wages

See above documents

3.      Punitive Damages

"The Spec-tator" was a private group.


One could not view the comments posted on "The Spec-tator" without being invited and then using your own email address and private password to access it.

"The Spec-tator" was not accessed during work hours or at the work place. Comments were not posted on "The Spec-tator" using defendant's computers.

Mr. Pietrylo did not invite any member of management, including Robert Anton, Rob Marano, Tino Ciambriello, and Michael Lamb.

Robert Anton and Rob Marano never asked Mr. Pietrylo or Ms. Marino for access to "The Spec-tator". Robert Anton sought Karen St. Jean's email address and password from her while she was working and he was her supervisor.

Karen St. Jean did not provide Rob Marano with her email address and password, yet he used them to access "The Spec-tator."

Rob Marano accessed or attempted to access "The Spec-tator" on a number of

occasions.

Rob Marano sent an email to Tino Ciambriello, V.P. of Operations, overseeing approximately 45 restaurants nationwide, and Michael Lamb, Director of Human Resources for approximately 6,000 employees, and provided them with Karen St. Jean's email address and password and explicit instructions on how to access "The Spec-tator" so that they "will be able to read all of the postings listed since this site inception 8 weeks ago."

Mr. Pietrylo and Ms. Marino were unaware of any of this.

**7.    DEFENDANT'S CONTESTED FACTS (Stated separately for each plaintiff. Proof shall be limited at trial to the matters set forth below. Failure to set forth any matter shall be deemed a waiver thereof.)**

**A.  Defendant intends to prove the following contested facts with regard to liability:**

1.     Karen St. Jean voluntarily (as intended in the statutes at issue) provided initial access to TiJean Rodriquez.

2.     Karen St. Jean voluntarily (as intended in the statutes at issue) provided her MySpace.com email address and password to Robert Anton which, in turn, gave him access to The Spec-Tator.

3.     Karen St. Jean knew that by giving access to the Spec-Tator to Robert Anton, other managers would become aware of The Spec-Tator.

4.     Karen St. Jean voluntarily (as intended in the statutes at issue) provided her email address and password to Rob Marano.

5.     Karen St. Jean, an authorized user of the MySpace.com group The Spec-Tator, authorized Houston's and Houston's employees Robert Anton and Rob Marano to access The Spec-Tator and its content without limitation.

6.    Karen St. Jean never limited or revoked her authorization for Houston's, Robert Anton and Rob Marano to access the MySpace.com group The Spec-Tator and its content.

7.    No employee of Houston's intentionally accessed the MySpace.com group The Spec-Tator without authorization. Tino Ciambriello never looked at The Spec-tator.

8.    No employee of Houston's intentionally exceeded the authorization provided by Karen St. Jean for access to the MySpace group.com The Spec-Tator.

9.    There was nothing – legally, practically or otherwise – to prevent Karen St. Jean or any other member of the MySpace.com group The Spec-Tator from displaying to others who were not members the on-line content of The Spec-Tator.

10.   Plaintiffs never had any way to know (and cannot know today) whether other members of the MySpace.com group The Spec-Tator displayed the on-line content of The Spec-Tator to others who were not members of the group.

11.   There was nothing – legally, practically or otherwise – to prevent Karen St. Jean or any other member of the MySpace.com group The Spec-Tator from providing that member's access information to others who were not members the on-line content of The Spec-Tator.

12.   Plaintiffs never had any way to know (and cannot know today) whether other members of the MySpace.com group The Spec-Tator provided their access information to others who were not members of the group.

13.    There was nothing – legally, practically or otherwise – to prevent non-members of the MySpace.com group The Spec-Tator who had been provided with a member's access information from displaying the on-line content of The Spec-Tator for themselves or anyone else.

14.    Plaintiffs never had any way to know (and cannot know today) whether other non-members of the MySpace.com group The Spec-Tator who had been provided with a member's access information displayed the on-line content of The Spec-Tator to themselves or others who were not members of the group.

15.    Those who posted on the MySpace.com group The Spec-Tator (including plaintiffs) knew that at any time any other member could show the complete contents of The Spec-Tator to non-members; that any other member could provide his or her access information to an unlimited number of non-members (who could in turn provide complete access to The Spec-Tator to anyone else); that at any time any member (or any non-member to whom a member had provided access information) could print some or all of the content of The Spec-Tator on paper, make copies, and otherwise dispose of printed copies of The Spec-Tator in any many seen fit by whoever had the print-out.

16.    Several members of The Spec-Tator chose to make postings under a pseudonym.

17.    Some members of The Spec-Tator chose not to make postings, or to make very few postings.

18.    Plaintiffs were at-will employees who were not terminated in violation of

statutory or common law.

19.     Mr. Rodriguez and Mr. Anton, who were mentioned in postings on The Spec-Tator, found the contents of The Spec-Tator to be offensive and disturbing, and they so advised Houston's management which found the contents of The Spec-Tator to be offensive and disturbing.

20.     Defendant's agents did not act with the requisite "knowing and intentional" state of mind required for a violation of the statutes.

21.     Defendant's agents did not act with the "willful and intentional" state of mind required for the court to assess punitive damages.

22.     Defendant's agents' conduct was not of the egregious nature warranting imposition of punitive damages.

**B.      Defendant intends to prove the following contested facts with regard to damages: (This statement must include the factual basis for each defense against plaintiff's claims for damages.)**

1.     Plaintiffs did not suffer any economic loss and/or failed to mitigate their damages.  Plaintiffs have not yet provided their wage statements for 2007 and 2008. Without those documents, plaintiffs cannot prove economic loss.

2.     Plaintiff Pietrylo did not suffer any debilitating emotional distress as a result of his termination.  There were many other stressors in plaintiff's life including parental abandonment.  Defendant will rely upon the testimony of Dr. Steven Simring.

3.     Defendant's agents did not act with the "willful and intentional" state of mind required for the court to assess punitive damages.

4.     Defendant's agents' conduct was not of the egregious nature warranting imposition of punitive damages.

**8.     PLAINTIFF'S WITNESSES (Aside from those called for impeachment purposes, only the witnesses whose names and addresses are listed below will be permitted to testify at trial.)**

On liability plaintiff intends to call the following witnesses who will testify in accordance with the following summaries⟶ *See Supplement to Pretrial Order*

Brian Pietrylo
Doreen Marino
Karen St. Jean
Rob Marano
         c/o Hillstone Restaurant Group
Tino Ciambriello
         c/o Hillstone Restaurant Group
Michael Lamb
         c/o Hillstone Restaurant Group

**A. On damages plaintiff intends to call the following witnesses who will testify in accordance with the following summaries:**

Brian Pietrylo
Doreen Marino

Please see response to 6B above

Sidney B. Heimbach, MD

Please see response to 6B above.

**B. Defendant objects to the following witnesses for the reasons stated:**

Defendant objects to the following witnesses:  Tino Ciambriello and Michael Lamb.

Neither was identified in Plaintiff's Rule 26 Disclosures or Answers to Interrogatories and

*[handwritten: overruled as set forth on the record on 2/17/09]*

cannot be called under Fed. R. Civ. Pro. 37. Furthermore, both reside more than 100 miles from

this District and are not subject to subpoena and have not been identified as corporate

representatives by this defendant. *[handwritten: will be presented as an in limine motion by plaintiff]*

**9.     DEFENDANT'S WITNESSES (Aside from those called for impeachment purposes, only the witnesses whose names and addresses are listed below will be permitted to testify at trial.)**

        **A.   On liability defendant intends to call the following witnesses who will testify in accordance with the following summaries:**

        Defendant reserves the right to call any witnesses in its case-in-chief that are identified by plaintiff.  In addition, Defendant intends to call the following:

        1.     Karen St. Jean who will testify that she voluntarily showed The Spec-Tator to TiJean Rodriquez and voluntarily gave her email address and password to defendant and was not threatened or coerced.

        2.     TiJean Rodriquez who will testify about the circumstances when he learned about The Spec-tator and about subsequent events at the restaurant regarding The Spec-tator and the plaintiffs.

        3.     Robert Anton who will testify about his interactions with Karen St. Jean in obtaining her email address and password and his conversations with other managers about The Spec-Tator.

        4.     Robert Marano who will testify about his interactions with Karen St. Jean and others  regarding the Spec-Tator and the decision to termination plaintiff's employment.

        5.     Brian Pietrylo who will testify about creating The Spec-tator and about the various postings.

        6.     Doreen Marino who will testify about the various postings within The Spec-Tator.

**B.  On damages defendant intends to call the following witnesses who will testify in accordance with the following summaries:**

Defendant reserves the right to call any witnesses in its case-in-chief that are identified by plaintiff.  In addition, Defendant intends to call the following:

1.      Dr. Steven S. Simring who will testify as to the lack of severe emotional distress and other stressors for Brian Pietrylo.  He will testify that there is no permanent psychiatric illness and will contradict the findings of plaintiff's expert.

**C.  Plaintiff objects to the following witnesses for the reasons stated:**  None.

**10.   EXPERT AND SPECIALIZED LAY OPINION WITNESSES (No expert or specialized lay opinion witness offering scientific, technical or other specialized knowledge will be permitted to testify at trial unless listed below. A summary of the expert's qualifications and a copy of his/her report must be provided for the Court's review at the pretrial conference. Said summary shall be read into the record at the time he/she takes the stand, and no opposing counsel shall be permitted to question his/her qualifications unless the basis of the objection is set forth herein,)** and shall be maintained in the Chambers files

**A. Plaintiff's expert and specialized lay opinion witnesses are:**

Sidney B. Heimbach, MD
Vantage Health System
2 Park Avenue
Dumont, New Jersey  07628

**B. Defendant's objections to the qualifications of plaintiffs experts and specialized lay opinion witnesses are:**

The statutes at issue do not allow for emotional distress damages and the plaintiff's common law claims are preempted.

**C. Defendant's expert and specialized lay opinion witnesses are:**

1.      Dr. Steven S. Simring who will testify as to the lack of severe emotional distress and permanent injuries and will identify other significant stressors in  Brian Pietrylo's life.

**D.  Plaintiff's objections to the qualifications of defendant's experts and specialized lay opinion witnesses are:**  None.

**11. PLAINTIFF'S DEPOSITIONS (List, by page and line, all deposition testimony to be offered into evidence. All irrelevant and redundant matters and all colloquy between counsel must be eliminated, unless ruled relevant. Deposition testimony to be used solely for impeachment purposes need not be listed.)**

    **A. On liability plaintiff intends to read into evidence the**

    **following:**

    1.    Karen St. Jean's entire deposition testimony if she is "unavailable" as defined by court rule

    **B. On damages plaintiff intends to read into evidence the**

    **following:**

    None

    **C. Defendant objects to the deposition testimony set forth above for the reasons stated:  None**

**12.    DEFENDANT'S DEPOSITIONS (List, by page and line, all deposition testimony to be offered into evidence, All irrelevant and redundant matters and all colloquy between counsel must be eliminated, unless ruled relevant.. Deposition testimony to be used solely for impeachment purposes need not be listed.)**

    **A.    On liability defendant intends to read into evidence the following:**

Defendant does not anticipate reading in any deposition testimony unless witnesses are unavailable which is not anticipated at this time.   If either Karen St. Jean or Robert Anton are unavailable at trial, their deposition testimony will be read in its entirety.

    **B.  On damages defendant intends to read into evidence the following:**

Defendant does not anticipate reading in any deposition testimony unless witnesses are unavailable which is not anticipated at this time.

    **C.  Plaintiff objects to the deposition testimony set forth above for the reasons stated:**

    N/A

**13.    PLAINTIFF'S EXHIBITS (Except for exhibits the need for which could not reasonably have been foreseen or which are used solely for impeachment purposes, only**

the exhibits set forth on the exhibit list attached hereto may be introduced at trial Any objection to an exhibit, and the reason for said objection, must be set forth below or it shall be deemed waived. All parties hereby agree that it will not be necessary to bring in the custodian of any exhibit as to *which no such* objection is made)

Plaintiff intends to introduce into evidence the exhibits listed on the attached exhibit list (list by number with a description of each exhibit):

See attached Exhibit A.


**14.    DEFENDANT'S EXHIBITS (Except for exhibits the need for which could not reasonably have been foreseen or which are used solely for impeachment purposes, only the exhibits set forth on the exhibit list attached hereto may be introduced at trial. Any objection to an exhibit, and the reason for said objection, must be set forth below or it shall be deemed waived. All parties hereby agree that it will not be necessary to bring in the custodian of any exhibit as to *which no such* objection is made )**

**A.    Defendant intends to introduce into evidence the exhibits listed on the attached exhibit list (list by number with a description of each exhibit):**

See attached Exhibit B.

**(COPIES OF EXHIBITS ARE TO BE MADE FOR OPPOSING COUNSEL, AND A BENCH BOOK OF EXHIBITS IS TO BE DELIVERED TO THE JUDGE AT THE START OF TRIAL. IF COUNSEL DESIRES TO DISPLAY EXHIBITS TO THE TURY, SUFFICIENT COPIES SHOULD BE AVAILABLE TO PROVIDE EACH JUROR WITH A COPY; ALTERNATIVELY, ENLARGED PHOTOGRAPHIC OR PROJECTED COPIES MAY BE USED.)**

**15.    PLAINTIFF'S LEGAL ISSUES**

Did Karen St. Jean voluntarily consent and authorize the management of Hillstone Restaurant Group, d/b/a Houston's, to access "The Spec-tator"?

Did Hillstone Restaurant Group, d/b/a Houston's, intentionally access the stored postings on "The Spec-tator" without authorization in violation of the Federal Stored Communications Act, 18 USC §2701-11?

Did Hillstone Restaurant Group, d/b/a Houston's, intentionally access the stored postings on "The Spec-tator" without authorization in violation of the New Jersey Stored Communications Act, NJSA 2A:156A-27?

Did Hillstone Restaurant Group, d/b/a Houston's, intentionally access the stored postings on "The Spec-tator" in excess of authorization in violation of the Federal Stored Communications Act, 18 USC §2701-11?

Did Hillstone Restaurant Group, d/b/a Houston's, intentionally access the stored postings on "The Spec-tator" in excess of authorization in violation of the New Jersey Stored Communications Act, NJSA 2A:156A-27?

Did Hillstone Restaurant Group, d/b/a Houston's, wrongfully terminate Brian Pietrylo by invading his privacy in violation of a clear mandate of public policy?

Did Hillstone Restaurant Group, d/b/a Houston's, wrongfully terminate Doreen Marino by invading her privacy in violation of a clear mandate of public policy?

Did Brian Pietrylo have a reasonable expectation of privacy with regard to the access to "The Spec-tator"?

Did Brian Pietrylo have a reasonable expectation of privacy with regard to the postings read and made on "The Spec-tator"?

Did Doreen Marino have a reasonable expectation of privacy with regard to the access to "The Spec-tator"?

Did Doreen Marino have a reasonable expectation of privacy with regard to the postings read and made on "The Spec-tator"?

Did Hillstone Restaurant Group, d/b/a Houston's, invade Brian Pietrylo's right to privacy in the manner by which they accessed "The Spec-tator"?

Did Hillstone Restaurant Group, d/b/a Houston's, invade Brian Pietrylo's right to privacy in the manner in which they read and copied and continued to access "The Spec-tator"?

Did Hillstone Restaurant Group, d/b/a Houston's, invade Doreen Marino's right to privacy in the manner by which they accessed "The Spec-tator"?

Did Hillstone Restaurant Group, d/b/a Houston's, invade Doreen Marino's right to privacy in the manner in which they read and copied and continued to access "The Spec-tator"?

Are plaintiffs entitled to punitive damages as a result of the defendant's conduct?

## 16.  DEFENDANT'S LEGAL ISSUES

1.  Whether Houston's was provided with voluntary access to The Spec-tator.

2.  Whether Houston's exceeded the voluntary authority provided to it for access to The Spec-tator.

3.  Whether the Stored Communications Act or the New Jersey Wiretapping and

Electronic Surveillance Control Act preempt all common law claims. **If the Court rules that the common law claims are not preempted, then the following legal issues arise:**

     a.     Whether the common law right to privacy in New Jersey constitutes a "clear mandate of public policy" prohibiting access by Houston's of the MySpace.com group The Spec-Tator.

     b.     Whether Plaintiffs' termination was in violation of any public policy.

     c.     Whether Houston's alleged interference with either plaintiff's solitude or seclusion was a substantial one, of a kind that would be highly offensive to the ordinary reasonable person.

     d.     Whether Houston's alleged interference with either plaintiff's solitude or seclusion was also the result of conduct to which the reasonable man would strongly object.

     e.     Whether either plaintiff had a legitimate expectation of privacy in the contents of the MySpace.com The Spec-Tator.

4.     Whether there was willful or intentional conduct under the statutes alleged to warrant assessment of punitive damages.

5.     Whether it is plaintiffs' burden to prove that one or more employees of Houston's intentionally accessed the MySpace.com group The Spec-Tator without authorization.

6.     Whether it is plaintiffs' burden to prove that one or more employees of Houston's intentionally exceeded the authorization provided by Karen St. Jean for access to the MySpace group.com The Spec-Tator.

7.     Whether it is plaintiff's burden to prove that Karen St. Jean did not provide

her e-mail address and password to Robert Anton and Rob Marano volutarily.

8.    Whether Karen St. Jean's authorization of TiJean Rodriguez's access to the content of the MySpace.com group The Spec-Tator provided authorization for Houston's and its agents to access The Spec-Tator thereafter.

9.    Whether Karen St. Jean's authorization of Robert Anton's access to the content of the MySpace.com group The Spec-Tator provided authorization for Houston's and its agents to access The Spec-Tator thereafter

10.    Whether Karen St. Jean's authorization of Rob Marano's access to the content of the MySpace.com group The Spec-Tator provided authorization for Houston's and its agents to access The Spec-Tator thereafter.

11.    Whether the purported acts or threats that allegedly rendered Karen St. Jean's authorization involuntary were wrongful or unlawful.

12.    Whether the public policy of New Jersey and Houston's obligations as an employer and place of public accommodation, including obligations under the New Jersey Law Against Discrimination, required it to take reasonable steps to investigate The Spec-Tator once Houston's learned of the existence of an internet site where employees were posting disturbing and offensive content concerning other employees, management, customers and the company.

**17. MISCELLANEOUS**

Set forth any other matters which require action by, or should be brought to the attention of the Court.

**18. JURY TRIALS - the following should be submitted to the Court no later than** 2/27/09

A. Each side shall submit to the Judge and to opposing counsel a trial brief or memorandum in accordance with Local Civil Rule 72, with citations to authorities and arguments in support of its position on all disputed issues of law. In the event a brief shall not be filed, the delinquent party's complaint or defense may be stricken.

B. Counsel shall submit. jointly to the Court a single set of: proposed preliminary and final jury instructions as to which the parties are in agreement Counsel for each party shall also submit to the Judge, with a copy to opposing counsel, written requests for additional instructions to the jury, <u>only</u> as to which the parties certify that they have not been able to agree. Supplemental requests for instructions as to facts or legal issues that could not reasonably have been anticipated before trial may be submitted at any time prior to argument to the jury. All requests for instructions shall be plainly marked with the name and number of the case, shall contain citations of supporting authorities, if any, and shall designate the party submitting same. In the case of multiple requests by a party, these shall be numbered in sequence and each request shall be on a separate sheet of paper.

C. if any hypothetical questions are to be put to an expert witness on direct examination, these shall be submitted to the Judge and to opposing counsel.

D. Counsel shall jointly submit to the Court a single set of proposed <u>voir dire</u> questions as to which the parties are in agreement, Counsel shall also submit to the Judge, with a copy to opposing counsel, any additional proposed <u>voir</u> dire as to which the parties certify that they have not been able to reach agreement.

E. Counsel shall jointly submit to the Court a single proposed special verdict sheet.

F.      Three copies of a joint exhibit list and two joint bench books of trial exhibits shall be submitted to the Court.

G.      Counsel shall provide the Court with a copy of the jury instructions and proposed verdict sheet on a computer disk in a WordPerfect readable format.

**19. NON-JURY TRIALS - The following shall be submitted to the Court no later than** 2|27|09

Each side shall submit to the Judge and opposing counsel a trial brief or memorandum in accordance with Local Civil Rule 7.2 with citation to authorities and arguments in support of its position on all disputed issues of law. In the event a brief shall not be filed, the deliquent party's complaint or defense shall be stricken.

    A.   Each side shall submit to the Judge and other counsel proposed written findings of fact and conclusions of law. There is reserved to counsel the right to submit additional proposed findings of fact and conclusions of law during the course of the trial on those matters that cannot reasonably be anticipated,

    B.   If any hypothetical questions are to be put to an expert witness on direct examination, they shall be submitted to the Judge and opposing counsel.

    D.. Counsel shall provide the Court with a copy of its proposed findings of fact and conclusions of law on a computer disk in a WordPerfect readable format..

**20. TRIAL COUNSEL (List the names of trial counsel for all parties.)**

    Plaintiff:  Fred Pisani, Esq.
               Ramp & Pisani, LLP, Attorney for Plaintiff

    Defendant:  Donna duBeth Gardiner, Esq.
                Michael O'B. Boldt, Esq.
                McElroy, Deutsch, Mulvaney & Carpenter, LLP

**21.   BIFURCATION (Where appropriate, the issues relating to liability shall be severed and tried to verdict. Thereafter, all issues relating to damages shall be tried. The issues of liability and damages SHALL/SHALL NOT be tried separately,** except that the same jury will be asked to consider evidence + the law concerning punitive damages if the jury finds defendant is liable and the conduct was "willful" as defined under the statute

22.    **ESTIMATED LENGTH OF TRIAL:**  One week

**AMENDMENTS TO THIS PRETRIAL ORDER WILL NOT BE PERMITTED UNLESS THE COURT DETERMINES THAT MANIFEST INJUSTICE WOULD RESULT IF THE AMENDMENT IS DISALLOWED THE COURT MAY FROM TIME TO TIME SCHEDULE CONFERENCES AS MAY BE REQUIRED EITHER ON ITS OWN MOTION OR AT THE REQUEST OF COUNSEL.**

_____
FRED PISANI, ESQ.

_____
DONNA DUBETH GARDINER, ESQ.

Dated: 2/17/09

_____
PATTY SHWARTZ
United States Magistrate Judge

(EXHIBIT LIST FOLLOWS)