## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| _____ | : Hon. Faith S. Hochberg, U.S.D.J. |
| BRIAN PIETRYLO, et al., | : Hon. Patty Shwartz, U.S.M.J. |
|  | : |
| Plaintiffs, | : CIVIL ACTION NO. 06-5754 (FSH) |
|  | : |
| vs. | : |
|  | : |
| HILLSTONE RESTAURANT | : |
| GROUP , d/b/a/ HOUSTON'S, | : |
|  | : |
| Defendant. | : |
|  | : Document Filed Electronically |
| _____ | : |

---

## DEFENDANT'S *IN LIMINE* MOTION ON PREEMPTION OF
## STATE LAW COMMON LAW CLAIMS

---

McELROY, DEUTSCH, MULVANEY &
    CARPENTER, LLP
1300 Mount Kemble Avenue
P.O. Box 2075
Morristown, New Jersey  07962-2075
973-993-8100
Attorneys for Defendant,
Hillstone Restaurant Group,d/b/a/ Houston's

**Of Counsel**:
Donna duBeth Gardiner, Esq.

**On the Brief**:
Donna duBeth Gardiner, Esq.
Michael O'B. Boldt, Esq.

## TABLE OF CONTENT

TABLE OF AUTHORITIES .......................................................................................................... i

PRELIMINARY STATEMENT ..................................................................................................... 1

STATEMENT OF FACTS .............................................................................................................. 2

ARGUMENT

    POINT I

        PLAINTIFFS' COMMON-LAW CLAIMS ARE PREEMPTED ..................................... 4

CONCLUSION ............................................................................................................................... 8

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Bansal v. Russ,*
513 F. Supp. 2d 264 (E.D. Pa. 2007) ........................................................................... 6

*Bunnell v. Motion Picture Association of America,*
567 F. Supp. 2d 1148 (C.D. Cal. 2007) ....................................................................... 5

*Colacicco v. Apotex, Inc.,*
521 F.3d 253 (3d Cir. 2008) ......................................................................................... 4

*Ideal Aerosmith, Inc. v Acutronic USA, Inc.,*
2009 U.S. Dist. LEXIS 33463 (W.D.Pa. 2008) ............................................................ 6

*Quon v. Arch Wireless Operating Co.,*
445 F. Supp. 2d 1116 (C.D. Cal. 2006), aff'd in part and
*rev'd in part on other grounds,* 529 F.3d 892 (9th Cir. 2008) ..................................... 5

*Rice v. Santa Fe Elevator Corp.,*
331 U.S. 218, 67 S. Ct. 1146, 91 L. Ed. 1447 (1947) ................................................. 4

*Surrick v. Killion,*
449 F.3d 520 (3d Cir. 2006) ......................................................................................... 4

## STATE CASES

*Muscovich v. Crowell,*
1995 WL 905403 (S.D. Iowa March 21, 2005) ............................................................. 5

## FEDERAL STATUTES

18 U.S.C. § 2701(a) ..................................................................................................... 6

18 U.S.C. § 2708 .......................................................................................................... 5

18 U.S.C. §§ 2701-11 ................................................................................................... 1

18 U.S.C. § 2708 .......................................................................................................... 4

## STATE STATUTES

N.J.S.A. 2A:156A-27 ........................................................................................................................... 1

N.J.S.A. 2A:156A-34 ................................................................................................................... 4, 5, 7

N.J.S.A. 2A:156A-34 ........................................................................................................................... 7

## PRELIMINARY STATEMENT

In this action, the surviving claims asserted by plaintiffs Brian Pietrylo and Doreen Marino allege that when managers employed by defendant Hillstone Restaurant Group Inc. d/b/a Houston's ("Houston's" or "Defendant") accessed a MySpace.com page called The Spec-tator, Houston's violated the federal Stored Communications Act, 18 U.S.C. §§ 2701-11 (the "SCA"), and its state counterpart, the New Jersey Wiretapping and Electronic Surveillance Control Act, N.J.S.A. 2A:156A-27 to 34 (the "New Jersey Act"). Those criminal statutes prohibit intentional access to stored electronic information without authorization by a user and provide for a civil right of action where the defendant acted "knowingly" or intentionally" (SCA) or "knowingly" or "purposefully" (the State Act).

Plaintiffs also allege that the exact same conduct invaded their right to privacy and resulted in their employment termination in violation of the "clear manadate of public policy" which they assert is grounded in their right to privacy. Plaintiffs' common law invasion of privacy and wrongful termination claims center on precisely the same facts as are at issue with regard to their claims under the SCA and the New Jersey Act. And plaintiffs seek the same remedies under the common law claims as under the statutes.

Crucially, both statutes contain express preemption clauses. Therefore, Plaintiffs' common law claims are preempted and should be dismissed.

## STATEMENT OF FACTS

In 2006, Plaintiffs Brian Pietrylo ("Pietrylo") and Doreen Marino ("Marino") were employed by Houston's restaurant at Riverside Square in Hackensack, New Jersey. In early March 2006, Pietrylo created a group on "myspace.com" called "The Spec-tator." The purpose was for "s\*\*t talking" about the restaurant and its managers. Even the name, "The Spec-tator", mocked the service and quality requirements or "specs" that Houston's required of its employees and its restaurants. The Spec-tator also published a stolen test that a manager had designed for employees on a new wine list. The Spec-tator contained ethnic slurs and derogatory comments about guests and managers as well as discussions about drug use and sexual acts.

Pietrylo send email invitations to other employees, inviting them to become members of The Spec-tator. The email invitation contained a link to The Spec-tator and once the invitee accepted the invitation, a link to the site would permanently appear on the invitee's own home page, also stored on the "myspace.com" website. Among the invitees was Karen St. Jean ("St. Jean") a greeter at the restaurant.

Plaintiffs posted offensive and derogatory comments about Houston's and its managers on The Spec-tator. In May 2006, St. Jean, an authorized member of the group, showed the site and its content to TiJean Rodriguez ("Rodriquez"), a Houston's manager who was also St. Jean's social friend. This occurred during dinner party at the Rodriguez home. Rodriguez told another manager, Robert Anton ("Anton") about the site. Anton and his wife had been the target of sexual speculation and otherwise offensive postings on The Spec-tator. When asked, St. Jean gave Anton her personal email address and password that would allow him to access The Spec-tator from Karen's personal

myspace.com home page. She explained how to use it the log-in information and Anton accessed the site from his home. At no time did St. Jean express any reservations or place any conditions on his use of the password information or his access to the site. Plaintiff's contend that St. Jean did not "voluntarily" authorize Anton to access The Spec-tator because of the supervisor/employee relationship.

In deposition, St. Jean testified that she was never threatened by anyone at Houston's or coerced in any way when asked for access to The Spec-tator. She gave the information freely and stated that she knew that it would be shared with other managers.

Anton found The Spec-tator's contents to be offensive and disturbing. In addition to postings personally attacking the Antons and other managers, there were obscenities, drug references and proprietary business information that the members were not authorized to have. Pietrylo had posted a test on the new wines that had been drafted by Rodriquez and was slated to be given to the wait staff.

Anton brought the site to the attention of Robert Marano ("Marano"), a regional supervisor of operations for Houston's. Marano consulted with other senior management at Hillstone Restaurant Group, explaining that he had learned that "there is a website out there that's dedicated . . . to making a mockery of [Houston's] and [its] management staff." Marano reviewed The Spec-tator and its contents, and also found the site disturbing and its contents were vulgar and offensive. Marano terminated Pietrylo and Marino.

# ARGUMENT

## POINT I

### PLAINTIFFS' COMMON-LAW CLAIMS ARE PREEMPTED.

Plaintiffs' state common law claims for invasion of privacy and wrongful termination in violation of a clear mandate of public policy (that policy being their right to privacy) are preempted by the specific and express preemption provisions of the SCA, 18 U.S.C. § 2708, and the New Jersey Act, N.J.S.A. 2A:156A-34. [1]  Plaintiffs should not be permitted to present proofs as to these claims.

"Under the Supremacy Clause, when state law conflicts or is incompatible with federal law, the federal law preempts the state law." *Surrick v. Killion*, 449 F.3d 520, 531 (3d Cir. 2006).  As explained by the Third Circuit Court of Appeals,

> The Supreme Court has identified three major situations where there is preemption. They were described in *Hillsborough County v. Automated Med. Labs., Inc.* as: (1) "express" preemption, applicable when Congress expressly states its intent to preempt state law; (2) "field" preemption, applicable when "Congress' intent to pre-empt all state law in a particular area may be inferred [because] the scheme of federal regulation is sufficiently comprehensive" or " 'the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject;' " and (3) "conflict" preemption, applicable when "state law is nullified to the extent that it actually conflicts with federal law," even though Congress has not displaced all state law in a given area. 471 U.S. 707, 713, 105 S.Ct. 2371, 85 L.Ed.2d 714 (1985) (quoting *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230, 67 S.Ct. 1146, 91 L.Ed. 1447 (1947)).

---

[1] Section 2708 states: "The remedies and sanctions described in this chapter are the only judicial remedies and sanctions for nonconstitutional violations of this chapter." N.J.S.A. 2A:156A-34 states: "The remedies and sanctions described in . . . 2A:156A-27 and 2A:156A-32 are the only judicial remedies and sanctions for nonconstitutional violations of [N.J.S.A.] . . . 2A:156A-27 . . . ."

*Colacicco v. Apotex, Inc.,* 521 F.3d 253, 261 (3d Cir. 2008) (footnote omitted). The statutes at issue here establish preemption over Plaintiffs' common law claims.

The exact issue of whether the SCA preempted state common-law claims was address in *Quon v. Arch Wireless Operating Co.*, 445 F. Supp.2d 1116, 1138 (C.D. Cal. 2006), aff'd in part and *rev'd in part on other grounds,* 529 F.3d 892 (9th Cir. 2008). In Quon, the court dismissed the plaintiff's common-law invasion of privacy claims holding that they were preempted by the SCA.   Significantly, the *Quon* court held:

> Congress' command in enacting section 2708 is clear:   Only those remedies outlined in the SCA are the ones, save for constitutional violations, that a party may seek for conduct prohibited by the SCA. The SCA thus displaces state law claims for conduct that is touched upon by the statute. . . . Congress left no room for supplementary state regulation for conduct covered by the statute.  There are other indicia in the statute itself that evinces Congress' effort to make suits to enforece or seek redress for the statute's prohibitions the exclusive ones for parties to pursue.  The intricacies of the regulatory scheme crafted by the ECPA (and the SCA) are fairly comprehensive:   Regulating private parties' conduct, law enforcement efforts to uncover stored electronic communications, and devising a fairly complicated scheme to accomplish both, including a private right of action for violations of the statute's provisions.  In light of the breadth of the SCA regulatory scheme and the clear command concerning the exclusivity of remedies (aside from federal constitutional claims) contained in section 2708 for conduct covered by the statute, it stands to reason "that Congress 'left no room' for supplementary state regulation."

Id. at 1138. *Accord Muscovich v. Crowell*, 1995 WL 905403 at *1 (S.D. Iowa March 21, 2005).

Although state courts have not applied the preemptive provision of N.J.S.A. 2A:156A-34, federal courts have applied the substantially identical language of 18 U.S.C. § 2708, and they have done so in a manner demonstrating that both the federal and state provisions preempt plaintiffs' common law claims in this matter. Thus, *in Bunnell v. Motion Picture Association of America*, 567 F. Supp.2d 1148, 1154-55, (C.D. Cal. 2007),

based on *Quon*'s SCA analysis, the court applied the federal Wiretap Act's parallel preemption provision to establish "express preemption" of state common law privacy claims, and also found that the Wiretap Act evidenced Congressional intent to preempt the "entire field of state law" (internal citations omitted) – also known as "field preemption." In *Bunnell*, the court held that the Wiretap Act preempted plaintiff's state law claims for invasion of privacy. *Id.* at 1154-55. Cf *Ideal Aerosmith, Inc. v Acutronic USA, Inc.*, 2009 U.S. Dist. Lexis 33463, *1, *16-17 (W.D.Pa. 2008),(declining to reach the issue of preemption because the conduct alleged for the state law claims of misappropriation of trade secrets  was permitted under the SCA rendering the SCA inapplicable). *But see Bansal v. Russ*, 513 F. Supp.2d 264, 282 (E.D. Pa. 2007) (§2708 precludes exclusion of evidence rather than state law claims).

     *Quon* and *Bunnell* are directly on point here.  Plaintiffs allege that Houston's violated the SCA and its state analog by intentionally accessing The Spec-tator without authorizarion. Both the federal and the state statutes impose liability only in the case of "intentional," "knowing" or purposeful unauthorized access.   18 U.S.C. § 2701(a), N.J.S.A. 156A-32a.   The same conduct and state of mind required to violate the statutes are, by definition, "conduct that is touched upon by the statute" so as to invoke statutory preemption.  This need for preemption is underscored because the plaintiffs rely on the exact same factual basis for all four allegations.

     In addition, Houston's primary defense to the statutory claims is that it had authorization to access The Spec-Tator.   As recognized in the Court's Opinion of July 24, 2008, precisely the same defenses would vitiate plaintiffs' common law claims for invasion of plaintiffs' privacy and for plaintiffs' wrongful termination in violation of a

clear mandate of public policy (the policy of privacy). (July 24 Order at 11-13.) Section 2708 expressly preempts claims based on the same alleged conduct, such as plaintiffs' state common-law claims, as does N.J.S.A. 2A:156A-34. Moreover, the federal and state legislation evidences legislative intent to "preempt the field" and supplant the common law claims asserted by plaintiffs here. And because plaintiffs assert claims seeking to subject Houston's to liability for conduct that is permitted by the SCA (or its New Jersey analog), these claims are preempted on that basis as well.

Houston's respectfully submits that this Court should dismiss plaintiff's state common law claims and preclude the introduction of evidence relating to them.

## CONCLUSION

Based on the foregoing, defendant Hillstone Restaurant Group Inc. d/b/a Houston's respectfully submits that the Court should enter an Order in limine dismissing plaintiff's common law claims and precluding the introduction of evidence at trial in support of such claims.

Respectfully submitted,

McELROY, DEUTSCH, MULVANEY & CARPENTER, LLP
Attorneys for Defendant,
Hillstone Restaurant Group, d/b/a Houston's


By: /s/Donna duBeth Gardiner
DONNA DUBETH GARDINER

Dated: February 26, 2009

1242250-2                                    8