RAMP & PISANI, LLP
60 Westervelt Avenue
P.O. Box 249
Tenafly, New Jersey 07670
(201)567-8877
Attorney for Plaintiffs,
Brian Pietrylo and Doreen Marino

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

---

BRIAN PIETRYLO, et al.

               Plaintiffs,

-v-

HILLSTONE RESTAURANT GROUP
d/b/a HOUSTON'S

            Defendant.

Hon. Faith S. Hochberg, U.S.D.J.
Hon. Patty Shwartz, U.S.M.J.

Civil Action No. 06-5754 (FSH)

ATTORNEY AFFIDAVIT IN SUPPORT
OF PLAINTIFFS' MOTION PURSUANT
TO RULE 54 (d)

---

I, Fred J. Pisani, Esq., do hereby depose and say, as follows:

1. I am a partner with the firm of Ramp & Pisani, LLP, attorneys for the plaintiffs, Brian Pietrylo and Doreen Marino. I make this affidavit in support of plaintiffs' application for counsel fees pursuant to Rule 54(d).

2. I am fully familiar with and have personal knowledge of the legal services rendered and costs incurred with regard to this three (3) year old litigation.

3. I understand that a final judgment has not been entered. I offer this motion at this time so that the court can address plaintiffs' motions and the defendant's post-verdict motions at the same time, instead of having to potentially amend the judgment each time a motion is filed by the parties.

1

4. On June 16, 2009, following a week long trial, the jury returned a verdict in favor of the plaintiffs and against the defendant finding that the defendant had violated the Federal Stored Communications Act and the New Jersey Wire Tapping & Electronic Surveillance Control Act five (5) times. The jury also found defendant's conduct to be malicious. They awarded the plaintiffs $3,403.00 in back pay damages, $2,500.00 to Brian Pietrylo and $903.00 to Doreen Marino. Pursuant to a stipulation between the parties, the court also awarded punitive damages of four (4) times the compensatory damages verdict, or $13,612.00.

Attached hereto as Exhibit "A" is a true copy of the jury verdict sheet.

5. Under the Federal Stored Communications Act, a person aggrieved by a violation of the act may, in a civil action, recover from the ...entity... which engaged in that violation such relief as may be appropriate. 18 U.S.C.A. 2707 (a).

In a civil action under this section, appropriate relief includes—

...

(2) damages under subsection (c); and

(3) a reasonable attorney's fee and other litigation costs reasonably incurred.

18 U.S.C.A 2707 (b)

In the case of a successful action to enforce liability (emphasis added) under this section, the court may assess the costs of the action, together with reasonable attorney fees determined by the court. 18 U.S.C.A. 2707 ( c).

The New Jersey Wire Tapping & Electronic Surveillance Control Act mirrors the Federal Stored Communications Act and also provides for an award of reasonable attorney fees and litigation costs. NJSA 2A: 156A-32.

2

6. Plaintiffs were clearly and unequivocally successful in enforcing liability against the defendant. Plaintiffs argued, and the jury found, that the defendant violated the federal and state statutes. Plaintiffs argued, and the jury found, that defendant violated these statutes five (5) times. Plaintiffs argued, and the jury found, that defendant's conduct was malicious in this regard.

7. During the course of this three (3) year litigation, I have expended 432.9 hours of time representing the plaintiffs, at the rate of $300.00 an hour. This hourly rate multiplied by the number of hours totals $129,870.00. The other litigation costs incurred total $1,988.27. Attached hereto as Exhibit "B" is a true copy of my itemized legal bill for services rendered and litigation costs incurred as a result of this litigation.

8. The facts and procedural history of this three (3) year litigation, as outlined Below, support my application for a reasonable attorney fee and litigation costs and should assist the court in determining the award for attorney fees and litigation costs to be entered in this case.

## RETAINER AGREEMENT

9. I agreed to represent the plaintiffs in this matter based upon a contingent fee arrangement. The plaintiffs and I executed a contingent fee agreement in September 2006. Attached hereto as Exhibit "C" is a true copy of our contingent fee agreement. Although the agreement called for the plaintiffs to be responsible for the payment of costs and expenses, my firm paid for all the costs and expenses with the exception of approximately $200.00.

## NOVELTY AND COMPLEXITY OF THE CASE

10. Although the facts of this case were relatively simple, the legal issues and concepts were not. They were novel and complex. There were no New Jersey cases found

addressing the federal and state statutes in the employment context. There were one or two found from the state of Pennsylvania.

11. In the entire country, only a hand full of cases have reported decisions on the interplay between these statutes and the employment context. One was found from the United States District Court, District of Hawaii, another from the 4th Circuit, Virginia, and another came from the District Court of Tennessee.

12. Due to the paucity of case law in this area, and the lack of clarity of the statutes in defining the meaning of the statute's language, the parties spent countless hours, prior to and during trial, drafting, crafting and arguing over the meaning of the terms contained in the statutes and the elements that would have to be proven at trial. For instance, we argued over the meaning of the terms "knowingly", "intentionally", "purposefully", since they were not defined in the statute or within the legislative history of the statute. We argued over the meaning of "authorization" and "excess authorization". We argued over the elements that plaintiffs had to prove to succeed on their claims. We argued over which subsections of the statute applied to the facts of this case, and so on.

13. There were no federal or New Jersey model jury charges on these statutes. For months, albeit sporadically, counsel for the parties and the court worked on the precise language that would be used in the jury charges and within the jury verdict sheet. For instance, defendant filed with the court a sixty-two (62) page document, including attachments, on the "appropriate jury charges for the statutory claims."

4

## **DEFENDANT'S VIGOROUS PRETRIAL, TRIAL AND POST TRIAL LITIGATION**

14. Plaintiffs filed their original complaint on or about November 27, 2006. From that moment on and continuing to date, the defendant has taken the position of vigorously litigating each and every aspect of this case. Even before they filed an answer, on January 17, 2007, defendant filed a motion to dismiss plaintiffs' complaint pursuant to Rule 12 (b) (6). Attached hereto as Exhibit "D" is a true copy of defendant's notice of motion to dismiss. The motion included defendant's argument that they were authorized to access "The Spec-tator."

15. On August 23, 2007, the court denied defendant's motion to dismiss and granted plaintiffs' motion to file an amended complaint. Attached hereto as Exhibit "E" is a true copy of the court's Order.

16. On or about December 20, 2007, defendant filed a motion for summary judgment seeking a dismissal of all of plaintiffs' claims. They again argued that plaintiffs' statutory claims and their common law right to privacy claim should be dismissed because they had authorization to access "The Spec-tator."

17. On July 24, 2008, the court entered the following opinion and order in response to defendant's motion for summary judgment:

Counts One and Three of the Amended Complaint were dismissed with prejudice ( plaintiffs voluntarily agreed to the dismissal)

Defendant's motion for summary judgment as to Count Five of the amended complaint ( Free Speech) was granted; and

Defendant's motion for summary judgment as to Counts Two ( federal stored communications act) Four ( NJ surveillance act), Six ( wrongful termination in violation of

public policy) and Seven ( invasion of privacy) was denied. Attached hereto as Exhibit "F" is a true copy of the court's Order, dated July 24, 2008.

18. On August 8, 2008, defendant filed a motion for reconsideration of the court's decision on the summary judgment motion. On September 24, 2008, the court denied defendant's motion for reconsideration. Attached hereto as Exhibit "G" is a true copy of the court's Order, dated September 24, 2008.

19. Post-trial, the defendant has filed a Rule 50 and Rule 59 motion even though the damage award totaled $17,015.00, and the ultimate issue on authorization was a fact issue clearly to be resolved by the jury.

## SETTLEMENT DISCUSSIONS

20. Defendant has never made the plaintiffs a bona fide good faith offer to settle this matter.

21. Prior to filing this lawsuit, I wrote to defendant advising them of our claims and inquiring if they were interested in discussing settlement. I received a letter back from them claiming that they were not liable in anyway and that the plaintiffs were justifiably fired.

22. The only "offer" the plaintiffs received was an offer of judgment for $5,000.00, which included costs and attorney fees.

23. During the entire litigation, there was not a single settlement discussion of any substance. In fact, when we appeared for the housekeeping conference, just prior to trial, defense counsel advised me that she had no authority to make a settlement offer.

## PUBLIC INTEREST

24. This case has received pre-trial and post-trial national media attention. Plaintiffs have not initiated nor solicited any of this media attention. Prior to trial, the case was featured in the following newspapers: New Jersey Law Journal, AOL News, The Star Ledger, and The Wall Street Journal. It was covered by the following media outlets: CNN, Fox News, and ABC: Eyewitness News ( Channel 7).  Following the verdict, the New Jersey Law Journal and The Bergen Record wrote an article about the case. CNN did a lengthy follow-up to their original story.

25. I have been told that the case has received this national attention because the media, the public, law scholars, and state agencies were interested in the outcome. They wanted to know how far an employer could go in accessing and monitoring their employees internet activities outside of the workplace; whether or not the conduct was tantamount to an invasion of privacy; and whether the firings violated a clear mandate of public policy.

## LITIGATED CLAIMS

26. The bulk of this litigation involved the statutory claims and the pendent state law claim of invasion of privacy. The lynch pin issue in this case, for both the statutory claims and the common law invasion of privacy claim, centered on whether or not Karen St. Jean "authorized" the defendant to access " The Spec-tator." The main focus of all of defendant's motions, including the motion to dismiss, the summary judgment motion, the motion for reconsideration, and the post-trial motions, was the issue of authorization.

27. In the court's well reasoned summary judgment opinion and the court's order denying the defendant's motion for reconsideration, the court held that plaintiffs' ability to recover on either the statutory claims or the invasion of privacy claim "turned" on the

disputed issue of whether or not St. Jean gave "consent" to the defendant to access "The Spec-tator".

28. The issue of authorization was vigorously litigated during the trial. The issue of authorization had to be decided by the jury based upon the credibility of the witnesses, since there were no documents evidencing, one way or the other, whether or not there was authorization.

## VOLUNTARY REDUCTION OF LEGAL BILL

29. I have reviewed in detail all of the services that I have rendered with regard to this lawsuit. It is extremely difficult to distinguish what is and what is not related to the prosecution of the statutory claims. Some are obviously not related to the statutory claims and to that extent , I am voluntarily reducing my application for attorney fees as follows:

|     |     |     |
| --- | --- | --- |
| (a) | Pre-suit services rendered from May 24, 2007 Through August 8, 2006 | $3,120.00 |
| (b) | 1/22/07 legal research free speech/right of privacy | $1,080.00 |
| (c) | 2/26/09 preparation of jury charges for privacy damage | $ 840.00 |
| (d) | 6/10/09 legal research privacy charges | $1,560.00 |
|     | Total Reduction | $6,600.00 |

8

## CONCLUSION

30. Based upon the foregoing, the undersigned respectfully requests that the court enter an order awarding reasonable attorney fees in the amount of $123,270.00 and litigation costs in the amount of $1,988.27.

RAMP & PISANI, LLP
60 Westervelt Avenue
P.O. Box 249
Tenafly, New Jersey 07670
(201)567-8877
Attorneys for Plaintiffs

Date: 7/20/09          BY: /s/ Fred J Pisani
                            FRED J. PISANI, ESQ.

Subscribed and sworn to before me
this 20th day of July, 2009.

WENDY R. WITTE
A NOTARY PUBLIC OF NEW JERSEY
MY COMMISSION EXPIRES MAY 27, 2011

9

# EXHIBIT "A"

Place a check mark by each answer which represents the result of your deliberations:

**I.    Violation of the Federal Stored Communications Act and the New Jersey Wire Tapping & Electronic Surveillance Control Act.**

With respect to Plaintiffs' claim that Houston's violated the Federal Stored Communications Act and the New Jersey Wire Tapping & Electronic Surveillance Control Act, answer the following question based upon your findings by a preponderance of the evidence:

1.    Did Houston's knowingly or intentionally or purposefully access The Spectator without authorization from Karen St. Jean?

Yes __X__    No _____

If you answered this question "No" write "No Cause" at the bottom of the page and proceed to the next page.  If you answered "Yes," answer Question 2 on this page.

2.    How many times did Houston's knowingly, purposefully or intentionally access the Spectator without authorization. ___5___.

**PROCEED TO THE NEXT PAGE**

## II.    Invasion of Privacy

With respect to Plaintiffs' claim that Houston's intentionally invaded their right to privacy, answer the following questions based upon your findings by a preponderance of the evidence:

3.    Was The Spectator a place of solitude and seclusion which was designed to protect the Plaintiffs' private affairs and concerns?

Yes __✗__    No _____

If you answered "No" to this question, do not answer any further questions and proceed to the next page.  If you answered "Yes" proceed to Question 4.

4.    Did the Plaintiffs have a reasonable expectation of privacy in the Spectator?

Yes _____    No __✗__

If you answered "No" to this question, do not answer any further questions and proceed to the next page.  If you answered "Yes," proceed to Question 5.

2

5.    Did Houston's intentionally intrude upon Plaintiffs' solitude or seclusion by its actions?

Yes _____    No _____

If you answered "No" to this question, do not answer any further questions and proceed to the next page.  If you answered "Yes," proceed to Question 6.

6.    Would Houston's actions be highly offensive to a reasonable person?

Yes _____    No _____

**PROCEED TO THE NEXT PAGE**

3

If you entered "No Cause" at the bottom of both pages 1 and 3, then your deliberations are completed and you should notify the court that you are ready to return your verdict.

If you answered "Yes" to Question 1 OR you answered "Yes" to all of Questions 3-6 then you should proceed to the next page.

## DAMAGES

**A.    Brian Pietrylo:**


If you find that Houston's conduct was a reasonably probable factor in any harm to Brian

Pietrylo, state what sum will fairly and reasonably compensate him: for


Emotional distress:         $ _X_


Back Pay:              $_2,500_ (Not to exceed $2,500.00)


**B.    Doreen Marino**


If you find that Houston's conduct was a reasonably probable factor in any harm to

Doreen Marino, state what sum will fairly and reasonably compensate her.


Back Pay:          $_903._ (Not to exceed $903.00)


**PROCEED TO THE NEXT PAGE**

5

**ADDITIONAL JURY QUESTIONS**

If you answered "Yes" to Question 1 or if you answered "Yes" to all of Questions 3-6, answer the following questions:

1.  Do you find by clear and convincing evidence that the conduct of Houston's which you found to be wrongful was wanton or wilful? "Wanton or wilful" means a deliberate act or omission with knowledge or a high degree of probability of harm to another who foreseeably might be harmed by defendant's acts or omissions and reckless indifference to the consequences of the acts or omissions. The conduct must be so morally reprehensible that it implies a criminal indifference to civil obligations.

    Yes _____    No __✕__

2.  Do you find by clear and convincing evidence that the conduct of Houston's which you found to be wrongful was malicious. Malicious conduct is intentional wrongdoing in the sense of an evil minded act.

    Yes __✕__    No _____

**YOUR DELIBERATIONS ARE NOW COMPLETED. NOTIFY THE COURT.**

# EXHIBIT "B"

## *Ramp & Pisani, LLP*
60 Westervelt Avenue
P. O. Box 249
Tenafly, NJ 07670

Ph:201- 567-8877                    Fax:201-567-7053

Doreen Marino                                              July 20, 2009
54 Sunnyside Avenue
Dumont, New Jersey 07628

**Attention:**                                  File #:    doreenmarino
                                                Inv #:        1083

**RE:**    Marino/Pietrylo   vs  Houston's Restaurant, Inc.

| DATE | DESCRIPTION | HOURS | AMOUNT | LAWYER |
|------|-------------|-------|--------|--------|
| May-24-06 | Receipt and review of documents and file | 1.30 | 390.00 | FJP |
| | Preparation of 1st draft of claims letter | 1.20 | 360.00 | FJP |
| May-26-06 | amend draft of claims letter | 1.30 | 390.00 | FJP |
| | e-mail to client | 0.10 | 30.00 | FJP |
| May-31-06 | Telephone call to client | 0.10 | 30.00 | FJP |
| | Telephone call from client | 0.20 | 60.00 | FJP |
| | e-mail to client | 0.10 | 30.00 | FJP |
| | e-mail to office | 0.20 | 60.00 | FJP |
| | Receipt and review of client changes to claims letter | 0.20 | 60.00 | FJP |
| | amend draft of claims letter | 0.20 | 60.00 | FJP |
| Jun-01-06 | final  amend draft of claims letter | 0.10 | 30.00 | FJP |
| Jun-22-06 | Receipt and review of houston's  response | 0.30 | 90.00 | FJP |

|           |                                                              |      |          |     |
|-----------|--------------------------------------------------------------|------|----------|-----|
|           | Telephone call to client                                     | 0.10 | 30.00    | FJP |
|           | Telephone call to client                                     | 0.20 | 60.00    | FJP |
|           | e-mail to doreen and brian: houston's response               | 0.10 | 30.00    | FJP |
| Jun-29-06 | Telephone call to client                                     | 0.20 | 60.00    | FJP |
| Jul-05-06 | Receipt and review of client email                           | 0.10 | 30.00    | FJP |
|           | Telephone call to client                                     | 0.30 | 90.00    | FJP |
| Jul-11-06 | Preparation of response to Houstons                          | 2.30 | 690.00   | FJP |
|           | e-mail to client                                             | 0.10 | 30.00    | FJP |
| Jul-12-06 | fax to viers                                                 | 0.20 | 60.00    | FJP |
| Aug-08-06 | e-mail to client                                             | 0.20 | 60.00    | FJP |
| Sep-13-06 | Preparation of retainer agreement                            | 0.30 | 90.00    | FJP |
| Sep-14-06 | Telephone call to client                                     | 0.20 | 60.00    | FJP |
| Oct-02-06 | Legal Research causes of action invasion of privacy/ wiretap statutes | 3.60 | 1,080.00 | FJP |
| Oct-11-06 | Receipt and review of client email                           | 0.10 | 30.00    | FJP |
|           | e-mail to client                                             | 0.10 | 30.00    | FJP |
|           | Legal Research                                               | 2.70 | 810.00   | FJP |
|           | Preparation of 1st draft of complaint                        | 3.50 | 1,050.00 | FJP |
| Oct-12-06 | amend draft of complaint                                     | 1.40 | 420.00   | FJP |
|           | e-mail to client                                             | 0.20 | 60.00    | FJP |
| Oct-30-06 | Telephone call to client                                     | 0.10 | 30.00    | FJP |
|           | Telephone call from client                                   | 0.40 | 120.00   | FJP |

| Date | Description | Hours | Amount | |
|---|---|---|---|---|
| Nov-14-06 | amend draft of complaint | 2.80 | 840.00 | FJP |
| | e-mail to client | 0.10 | 30.00 | FJP |
| Nov-15-06 | Receipt and review of client email | 0.10 | 30.00 | FJP |
| Nov-22-06 | amend draft of complaint | 0.30 | 90.00 | FJP |
| Nov-30-06 | electronic filing of complaint, summons & civil case sheet | 0.60 | 180.00 | FJP |
| | Correspondence to clients | 0.20 | 60.00 | FJP |
| Dec-08-06 | Correspondence to process server | 0.40 | 120.00 | FJP |
| Jan-19-07 | Receipt and review of motion to dismiss | 1.40 | 420.00 | FJP |
| | Legal Research : consent authoriz under statute | 1.60 | 480.00 | FJP |
| Jan-22-07 | begin preparation of 1st draft of legal brief in opposition to motion to dismiss | 2.60 | 780.00 | FJP |
| | Legal Research : free speech and right of privacy | 3.60 | 1,080.00 | FJP |
| Jan-23-07 | telephone conference with clients | 0.50 | 150.00 | FJP |
| | review   comments on the group site | 0.80 | 240.00 | FJP |
| | Legal Research : public policy/ consent/privacy | 3.70 | 1,110.00 | FJP |
| Jan-24-07 | Preparation of 1st draft of notice of cross motion | 0.40 | 120.00 | FJP |
| | Preparation of 1st draft of order | 0.40 | 120.00 | FJP |
| | Preparation of  1st draft of attorney certification | 0.10 | 30.00 | FJP |
| | continue preparation of legal brief | 6.00 | 1,800.00 | FJP |
| Jan-25-07 | Preparation of amended complaint | 1.60 | 480.00 | FJP |
| Jan-26-07 | fianlize and file cross motion and brief in opposition | 3.70 | 1,110.00 | FJP |

| Date | Description | Hours | Amount | |
|---|---|---|---|---|
| Jan-29-07 | Correspondence to judge hochberg | 0.20 | 60.00 | FJP |
| | Correspondence to client | 0.20 | 60.00 | FJP |
| Jan-30-07 | Receipt and review of counsel letter | 0.20 | 60.00 | FJP |
| | e-mail from client | 0.10 | 30.00 | FJP |
| Feb-15-07 | Receipt and review of defendant's reply` | 0.40 | 120.00 | FJP |
| Feb-16-07 | Receipt and review of defendant's reply brief | 0.80 | 240.00 | FJP |
| | Preparation of 1st draft of plaintiffs' reply brief | 0.90 | 270.00 | FJP |
| Feb-19-07 | amend draft of reply brief | 1.60 | 480.00 | FJP |
| Feb-20-07 | electronic filing of reply brief | 0.20 | 60.00 | FJP |
| Mar-13-07 | Telephone call to client | 0.30 | 90.00 | FJP |
| | Preparation of 1st draft of initial disclosures/joint discovery plan | 2.80 | 840.00 | FJP |
| Mar-16-07 | amend draft of joint discovery plan | 0.40 | 120.00 | FJP |
| | e-mail to counsel | 0.20 | 60.00 | FJP |
| Mar-20-07 | amend draft of joint discovery plan | 0.20 | 60.00 | FJP |
| | Correspondence to court | 0.20 | 60.00 | FJP |
| Mar-21-07 | amend draft of initial disclosures | 0.40 | 120.00 | FJP |
| Mar-23-07 | Attendance at court : scheduling conference | 1.30 | 390.00 | FJP |
| Apr-05-07 | Telephone call with gardiner | 0.20 | 60.00 | FJP |
| | Telephone call to client | 0.10 | 30.00 | FJP |
| | Correspondence to clients | 0.30 | 90.00 | FJP |
| | Telephone call from client | 0.40 | 120.00 | FJP |

|  | Correspondence to counsel | 0.20 | 60.00 | FJP |
|---|---|---|---|---|
|  | Telephone call to client | 0.20 | 60.00 | FJP |
| Apr-10-07 | Preparation of 1st draft of mediation statement | 1.20 | 360.00 | FJP |
| Apr-12-07 | amend draft of meditation statement | 0.60 | 180.00 | FJP |
| Apr-25-07 | Telephone call from client | 0.20 | 60.00 | FJP |
| Apr-27-07 | Preparation of interrogatories | 2.80 | 840.00 | FJP |
|  | Preparation of notice to produce documents | 1.70 | 510.00 | FJP |
| Apr-30-07 | amend draft of discovery requests | 0.30 | 90.00 | FJP |
|  | Correspondence to counsel | 0.20 | 60.00 | FJP |
|  | Receipt and review of initial def rogs and doc req | 0.30 | 90.00 | FJP |
|  | Correspondence to client | 0.30 | 90.00 | FJP |
| May-09-07 | e-mail to client | 0.10 | 30.00 | FJP |
|  | e-mail to counsel | 0.10 | 30.00 | FJP |
| May-15-07 | Receipt and review of counsel emails | 0.20 | 60.00 | FJP |
|  | e-mail to mediator | 0.10 | 30.00 | FJP |
| May-21-07 | Receipt and review of emails from counsel and mediator | 0.20 | 60.00 | FJP |
|  | e-mail to mediator | 0.10 | 30.00 | FJP |
|  | e-mail to client | 0.10 | 30.00 | FJP |
| Jun-20-07 | Attendance at mediation : Morristown | 5.00 | 1,500.00 | FJP |
| Jun-28-07 | Receipt and review of wolf email | 0.10 | 30.00 | FJP |
|  | e-mail to wolf | 0.20 | 60.00 | FJP |

| Jul-05-07 | e-mail to  clients | 0.20 | 60.00 | FJP |
| Jul-12-07 | Correspondence to client | 0.20 | 60.00 | FJP |
| | Preparation of deposition notice | 0.20 | 60.00 | FJP |
| | fax to counsel | 0.10 | 30.00 | FJP |
| Jul-16-07 | Telephone call to client | 0.10 | 30.00 | FJP |
| Jul-23-07 | Preparation of subpoena | 0.30 | 90.00 | FJP |
| | Correspondence to witness | 0.20 | 60.00 | FJP |
| | Correspondence to GSS | 0.10 | 30.00 | FJP |
| Aug-06-07 | Correspondence to counsel | 0.20 | 60.00 | FJP |
| | Correspondence to client | 0.10 | 30.00 | FJP |
| Aug-10-07 | Preparation of 1st draft of answers to rogs | 4.80 | 1,440.00 | FJP |
| | e-mail to client | 0.10 | 30.00 | FJP |
| | e-mail from client | 0.10 | 30.00 | FJP |
| Aug-14-07 | telephone conference with Judge Shwartz and counsel | 0.50 | 150.00 | FJP |
| | Preparation of 1st draft of response to doc re | 1.30 | 390.00 | FJP |
| | e-mail to client | 0.10 | 30.00 | FJP |
| Aug-16-07 | conference w clients | 0.80 | 240.00 | FJP |
| Aug-17-07 | e-mail to and from client | 0.20 | 60.00 | FJP |
| | Preparation for st jean depostiion | 1.20 | 360.00 | FJP |
| Aug-20-07 | deposition of karen st jean | 2.20 | 660.00 | FJP |
| | Telephone call to client | 0.20 | 60.00 | FJP |

| Aug-21-07 | e-mail to and from counsel | 0.20 | 60.00 | FJP |
| | e-mail to and from counsel | 0.20 | 60.00 | FJP |
| Aug-24-07 | Receipt and review of judges ruling | 0.30 | 90.00 | FJP |
| | e-mail to client | 0.20 | 60.00 | FJP |
| | Telephone call to client | 0.20 | 60.00 | FJP |
| Aug-28-07 | Telephone call to client | 0.10 | 30.00 | FJP |
| Aug-29-07 | amend draft of marino answers to rogs and responses todoc req | 1.30 | 390.00 | FJP |
| | amend draft of pietrylo answers to rogs and responses to doc req | 1.20 | 360.00 | FJP |
| | Correspondence to counsel | 0.20 | 60.00 | FJP |
| Sep-05-07 | Receipt and review of client email | 0.10 | 30.00 | FJP |
| | Telephone call to client | 0.10 | 30.00 | FJP |
| Sep-06-07 | Telephone call with client | 0.20 | 60.00 | FJP |
| | Telephone call with counsel | 0.20 | 60.00 | FJP |
| | Telephone call with shwartz's chambers | 0.10 | 30.00 | FJP |
| | Correspondence to court | 0.20 | 60.00 | FJP |
| Sep-07-07 | amend and file amended complaint | 1.20 | 360.00 | FJP |
| | Preparation of subpoena and cover letter: anton | 0.40 | 120.00 | FJP |
| Sep-12-07 | Receipt and review of judges amended order | 0.20 | 60.00 | FJP |
| | e-mail to and from counsel | 0.10 | 30.00 | FJP |
| Sep-24-07 | conference w clients | 0.20 | 60.00 | FJP |
| | Receipt and review of heimbach letter | 0.20 | 60.00 | FJP |

| | | | | |
|---|---|---|---|---|
| | Telephone call with gardiners office | 0.10 | 30.00 | FJP |
| | Telephone call with gardiner | 0.10 | 30.00 | FJP |
| | Telephone call with court | 0.10 | 30.00 | FJP |
| | Telephone call to client | 0.10 | 30.00 | FJP |
| | Telephone call with court | 0.10 | 30.00 | FJP |
| | Telephone call with gardiner | 0.10 | 30.00 | FJP |
| | Telephone call with Nicole ghisolfi | 0.40 | 120.00 | FJP |
| Sep-25-07 | Correspondence to heimbach | 0.60 | 180.00 | FJP |
| | Telephone call with heimbach's office | 0.10 | 30.00 | FJP |
| | telephone conference with judge shwartz and gardiner | 0.30 | 90.00 | FJP |
| | Telephone call to client | 0.10 | 30.00 | FJP |
| Sep-27-07 | Telephone call with heimbach | 0.30 | 90.00 | FJP |
| | Receipt and review of order status report | 0.20 | 60.00 | FJP |
| | e-mail from gardiner | 0.10 | 30.00 | FJP |
| | Telephone call with gardiner | 0.20 | 60.00 | FJP |
| Sep-28-07 | Telephone call with anton's office | 0.10 | 30.00 | FJP |
| Oct-01-07 | e-mail to and from gardiner | 0.10 | 30.00 | FJP |
| | Telephone call to client | 0.20 | 60.00 | FJP |
| Oct-05-07 | Telephone call with gardiner's office | 0.10 | 30.00 | FJP |
| | e-mail to gardiner | 0.10 | 30.00 | FJP |
| | e-mail to gardiner | 0.10 | 30.00 | FJP |

| | | | | |
|---|---|---|---|---|
| Oct-08-07 | Telephone call with gardiner | 0.20 | 60.00 | FJP |
| | Telephone call with anton home | 0.10 | 30.00 | FJP |
| | Preparation of 1st draft of joint report | 0.80 | 240.00 | FJP |
| | Preparation of response to alleged discovery deficiencies | 1.70 | 510.00 | FJP |
| | Receipt and review of defendants discovery | 1.40 | 420.00 | FJP |
| | Telephone call from client | 0.50 | 150.00 | FJP |
| Oct-09-07 | Telephone call with gardiner | 0.10 | 30.00 | FJP |
| Oct-10-07 | Preparation for anton deposition | 2.80 | 840.00 | FJP |
| | amend draft of status report | 0.20 | 60.00 | FJP |
| | Telephone call with gardiner | 0.20 | 60.00 | FJP |
| | e-mail to client | 0.10 | 30.00 | FJP |
| Oct-11-07 | Correspondence to anton | 0.20 | 60.00 | FJP |
| | Telephone call with anton | 0.10 | 30.00 | FJP |
| | Telephone call from client | 0.20 | 60.00 | FJP |
| Oct-15-07 | Telephone call with gardiner | 0.20 | 60.00 | FJP |
| Oct-16-07 | Preparation of final answers to deficiencies | 1.50 | 450.00 | FJP |
| | fax to gardiner | 0.20 | 60.00 | FJP |
| Oct-18-07 | deposition of robert anton | 1.80 | 540.00 | FJP |
| Oct-22-07 | Preparation of Doreen for deposition | 0.30 | 90.00 | FJP |
| Oct-23-07 | deposition of Doreen Marino | 2.80 | 840.00 | FJP |
| Oct-24-07 | Preparation of brian pietrylo for deposition | 0.30 | 90.00 | FJP |

|  |  |  |  |  |
|---|---|---|---|---|
|  | Preparation of deposition outline for marano | 1.20 | 360.00 | FJP |
| Oct-25-07 | deposition of Rob Marano | 4.50 | 1,350.00 | FJP |
| Oct-26-07 | deposition of Brian Pietrylo | 4.70 | 1,410.00 | FJP |
| Oct-30-07 | e-mail to and from counsel | 0.10 | 30.00 | FJP |
| Oct-31-07 | Correspondence to counsel: supp doc prod | 0.20 | 60.00 | FJP |
|  | e-mail to clients | 0.20 | 60.00 | FJP |
| Nov-01-07 | Telephone call from client | 0.30 | 90.00 | FJP |
| Nov-27-07 | e-mail to clients | 0.10 | 30.00 | FJP |
|  | e-mail to counsel | 0.10 | 30.00 | FJP |
| Nov-28-07 | e-mail to gardiner | 0.10 | 30.00 | FJP |
|  | Telephone call with gardiner | 0.20 | 60.00 | FJP |
|  | e-mail from gardiner | 0.10 | 30.00 | FJP |
| Dec-06-07 | Telephone call with karen st john | 0.40 | 120.00 | FJP |
| Dec-14-07 | Legal Research : coercion/duress | 1.80 | 540.00 | FJP |
| Jan-03-08 | Receipt and review of defendants summary jodgment papers | 1.00 | 300.00 | FJP |
|  | Preparation of st jean declaration | 0.40 | 120.00 | FJP |
|  | Preparation of fjp certfication | 0.60 | 180.00 | FJP |
|  | review  deposition transcripts for statement of facts | 3.20 | 960.00 | FJP |
|  | Preparation of 1st draft of statement of facts | 1.80 | 540.00 | FJP |
|  | Telephone call with karen st jean | 0.20 | 60.00 | FJP |
| Jan-04-08 | Legal Research opposition to sj motion | 5.50 | 1,650.00 | FJP |

| Date | Description | Hours | Amount | Initials |
|---|---|---|---|---|
| Jan-07-08 | Preparation of 1st draft of brief in opposition to sj motion | 4.70 | 1,410.00 | FJP |
| Jan-08-08 | amend draft of statement of facts | 2.90 | 870.00 | FJP |
| Jan-09-08 | amend draft of brief in opposition to sj motion | 4.80 | 1,440.00 | FJP |
| Aug-04-08 | Receipt and review of court decision sj motion | 0.80 | 240.00 | FJP |
| | e-mail to client | 0.20 | 60.00 | FJP |
| Aug-12-08 | Preparation of 1st draft of opposition to reconsideration | 1.20 | 360.00 | FJP |
| Aug-14-08 | amend draft of opposition legal memo | 0.30 | 90.00 | FJP |
| | Correspondence to court | 0.20 | 60.00 | FJP |
| | Correspondence to client | 0.20 | 60.00 | FJP |
| Oct-02-08 | Receipt and review of counsel letter | 0.10 | 30.00 | FJP |
| | Correspondence to arbitrator | 0.20 | 60.00 | FJP |
| Nov-24-08 | Telephone call with boldt | 0.20 | 60.00 | FJP |
| | Telephone call with boldt | 0.10 | 30.00 | FJP |
| Dec-04-08 | Telephone call with heimbach office | 0.10 | 30.00 | FJP |
| Dec-08-08 | Telephone call with bolt | 0.10 | 30.00 | FJP |
| | telephone conference with judge martin and gardiner | 0.20 | 60.00 | FJP |
| Dec-10-08 | Telephone call with heimbach | 0.10 | 30.00 | FJP |
| Dec-22-08 | Receipt and review of emails | 0.20 | 60.00 | FJP |
| | e-mail to client | 0.10 | 30.00 | FJP |
| | Correspondence to counsel | 0.20 | 60.00 | FJP |
| Dec-30-08 | Legal Research : statutory damages under 18 USC 2707 | 2.20 | 660.00 | FJP |

| | | | | |
|---|---|---|---|---|
| Jan-05-09 | Correspondence to heinbach | 0.10 | 30.00 | FJP |
| | Correspondence to St jean | 0.20 | 60.00 | FJP |
| | e-mail to client | 0.10 | 30.00 | FJP |
| Jan-06-09 | Telephone call with heimbach | 0.10 | 30.00 | FJP |
| Jan-08-09 | Telephone call with Dr. heimbach | 0.10 | 30.00 | FJP |
| | Receipt and review of boldt fax | 0.10 | 30.00 | FJP |
| | Telephone call with boldt | 0.10 | 30.00 | FJP |
| Jan-12-09 | deposition of Dr. Heimbach | 2.50 | 750.00 | FJP |
| Jan-15-09 | e-mail to client | 0.10 | 30.00 | FJP |
| Jan-23-09 | Receipt and review of client email | 0.20 | 60.00 | FJP |
| | Telephone call with boldt | 0.20 | 60.00 | FJP |
| | Preparation of 1st draft of exhibit list | 1.30 | 390.00 | FJP |
| | Telephone call with judge hochberg's chambers | 0.10 | 30.00 | FJP |
| | e-mail to clients | 0.20 | 60.00 | FJP |
| Feb-04-09 | e-mail to client | 0.20 | 60.00 | FJP |
| | Preparation of 1st draft of Pre-trial order | 4.40 | 1,320.00 | FJP |
| | Telephone call with boldt | 0.10 | 30.00 | FJP |
| | Preparation of 1st draft of exhibit list | 2.20 | 660.00 | FJP |
| Feb-05-09 | Preparation of legal issues for pre-trial order | 1.30 | 390.00 | FJP |
| | e-mail to and from client | 0.10 | 30.00 | FJP |
| | e-mail to client | 0.10 | 30.00 | FJP |

| | | | | |
|---|---|---|---|---|
| | amend draft of pre-trial order | 2.80 | 840.00 | FJP |
| | e-mail to and from client | 0.10 | 30.00 | FJP |
| | continue preparation of pre-trial order and exhibit list | 2.30 | 690.00 | FJP |
| | e-mail to boldt | 0.10 | 30.00 | FJP |
| | e-mail to client | 0.10 | 30.00 | FJP |
| Feb-09-09 | Receipt and review of houstons proposed stip facts | 0.60 | 180.00 | FJP |
| | Receipt and review of hosuton's proposed exhibit list | 0.40 | 120.00 | FJP |
| | telephone conference with gardiner stipulated facts | 0.60 | 180.00 | FJP |
| Feb-10-09 | Receipt and review of proposed revised facts | 1.20 | 360.00 | FJP |
| | revise proposed facts | 0.40 | 120.00 | FJP |
| | e-mail to gardiner | 0.20 | 60.00 | FJP |
| | review defendants exhibit list | 0.50 | 150.00 | FJP |
| | Preparation of objections to exhibit list | 0.30 | 90.00 | FJP |
| | review edited pre-trial order | 0.50 | 150.00 | FJP |
| | revise edited pre-trial order | 0.30 | 90.00 | FJP |
| | review gardiner's amended pre-trial order | 0.30 | 90.00 | FJP |
| | revise amended pre-trial order | 0.20 | 60.00 | FJP |
| | review additional amended pre-trial order | 0.20 | 60.00 | FJP |
| | revise additional amended pre-trial order | 0.20 | 60.00 | FJP |
| | review last amended pre-trial order | 0.30 | 90.00 | FJP |
| | revise final pre-trial order | 0.20 | 60.00 | FJP |

|  |  |  |  |  |
|---|---|---|---|---|
|  | Telephone call with gardiner | 0.10 | 30.00 | FJP |
|  | Telephone call with gardiner | 0.20 | 60.00 | FJP |
| Feb-16-09 | Receipt and review of boldt email and attachment | 0.20 | 60.00 | FJP |
|  | Preparation of supplement to witness list | 0.50 | 150.00 | FJP |
|  | Telephone call from client | 0.30 | 90.00 | FJP |
|  | Preparation of notice in lieu of subpoena | 0.20 | 60.00 | FJP |
|  | Correspondence to rudansky | 0.20 | 60.00 | FJP |
|  | Preparation for pre-trial conference | 0.60 | 180.00 | FJP |
| Feb-17-09 | Attendance at court : Pre-trial conference | 2.20 | 660.00 | FJP |
| Feb-18-09 | e-mail to rudansky | 0.20 | 60.00 | FJP |
|  | Telephone call from client | 0.20 | 60.00 | FJP |
|  | Receipt and review of trial management order | 0.30 | 90.00 | FJP |
|  | Receipt and review of final pretrial order | 0.30 | 90.00 | FJP |
|  | Receipt and review of judge bank letter | 0.20 | 60.00 | FJP |
| Feb-20-09 | Legal Research motions in limine | 2.30 | 690.00 | FJP |
|  | Correspondence to doctor | 0.20 | 60.00 | FJP |
| Feb-23-09 | Receipt and review of radansky letter | 0.20 | 60.00 | FJP |
|  | Preparation of subpoena for st jean | 0.20 | 60.00 | FJP |
|  | Correspondence to st jean | 0.10 | 30.00 | FJP |
|  | Correspondence to gss | 0.20 | 60.00 | FJP |
|  | Correspondence to counsel: settlement demand | 0.20 | 60.00 | FJP |

| | | | | |
|---|---|---|---|---|
| | Correspondence to counsel: notice in lieu of subpoena | 0.20 | 60.00 | FJP |
| | Telephone call to client | 0.40 | 120.00 | FJP |
| | Correspondence to counsel: damages | 0.20 | 60.00 | FJP |
| Feb-24-09 | Legal Research : punitive damages privacy | 4.30 | 1,290.00 | FJP |
| | Preparation of 1st draft of trial brief | 5.40 | 1,620.00 | FJP |
| Feb-25-09 | Telephone call with gardiner | 0.20 | 60.00 | FJP |
| | Receipt and review of proposed joint statement of case | 0.20 | 60.00 | FJP |
| | edit joint statement of case | 0.30 | 90.00 | FJP |
| | e-mail to gardiner | 0.10 | 30.00 | FJP |
| | Preparation of 1st draft of proposed jury charges | 4.60 | 1,380.00 | FJP |
| | Telephone call with gardiner | 0.20 | 60.00 | FJP |
| | Telephone call with court | 0.20 | 60.00 | FJP |
| | Telephone call with gardiner | 0.20 | 60.00 | FJP |
| | Receipt and review of defendants proposed jur charges initial | 0.30 | 90.00 | FJP |
| | review  proposed jury charges continued | 0.50 | 150.00 | FJP |
| | Legal Research jur charges | 0.80 | 240.00 | FJP |
| Feb-26-09 | Receipt and review of counsel letter extension | 0.10 | 30.00 | FJP |
| | Preparation of 1st draft of plaintiff's proposed jury charges | 2.80 | 840.00 | FJP |
| | Preparation of first draft of jury charges: damages privacy | 2.80 | 840.00 | FJP |
| | Preparation of 1st draft of proposed jury verdict sheets | 1.80 | 540.00 | FJP |

|  |  |  |  |  |
|---|---|---|---|---|
|  | Telephone call with GARDINER | 0.30 | 90.00 | FJP |
|  | Telephone call to client | 0.10 | 30.00 | FJP |
|  | e-mail to client | 0.20 | 60.00 | FJP |
|  | e-mail to brian | 0.20 | 60.00 | FJP |
|  | Telephone call to client | 0.10 | 30.00 | FJP |
| Feb-27-09 | amend draft of statutory jury charges | 0.30 | 90.00 | FJP |
|  | amend draft of jury charges and jury verdict sheet | 3.80 | 1,140.00 | FJP |
|  | e-mail to and from counsel | 0.20 | 60.00 | FJP |
|  | amend draft of jury charges and verdict sheet ( cont) | 2.10 | 630.00 | FJP |
| Mar-02-09 | emails to/from counsel: review trial order;prepare and revise, edit , review plaintiff/defendant jury charges | 9.50 | 2,850.00 | FJP |
| Mar-03-09 | Preparation of legal issues;voirdire; continue to revise and draft jury cjharges | 4.40 | 1,320.00 | FJP |
|  | Preparation of plaintiffs final exhibit list | 1.30 | 390.00 | FJP |
|  | Telephone call with gardiner | 0.50 | 150.00 | FJP |
| Mar-04-09 | Preparation of bench book and exhibit book | 5.00 | 1,500.00 | FJP |
|  | amend draft of trial brief | 2.20 | 660.00 | FJP |
| Mar-05-09 | e-mail to clients | 0.20 | 60.00 | FJP |
|  | Correspondence to | 0.20 | 60.00 | FJP |
|  | Telephone call with doctor's office | 0.10 | 30.00 | FJP |
|  | Telephone call with doctor heimbach | 0.20 | 60.00 | FJP |
|  | Telephone call with gardiner | 0.20 | 60.00 | FJP |

| Mar-06-09 | Receipt and review of gardiner email | 0.20 | 60.00 | FJP |
| | Receipt and review of client email | 0.10 | 30.00 | FJP |
| | Legal Research waiver preemption | 3.30 | 990.00 | FJP |
| Mar-09-09 | Preparation of brief in opposition to in limine motion | 3.80 | 1,140.00 | FJP |
| | Preparation of exhibit certification | 0.30 | 90.00 | FJP |
| | Preparation of certification of service | 0.20 | 60.00 | FJP |
| Mar-10-09 | e-mail to and from gardiner | 0.20 | 60.00 | FJP |
| | Correspondence to judge | 0.20 | 60.00 | FJP |
| Mar-11-09 | Telephone call with courtroom deputy | 0.10 | 30.00 | FJP |
| Mar-12-09 | Telephone call from client | 0.20 | 60.00 | FJP |
| | Receipt and review of judge hochberg's order | 0.20 | 60.00 | FJP |
| Mar-16-09 | conference w client | 3.20 | 960.00 | FJP |
| May-11-09 | Receipt and review of counsel email: discovery | 0.20 | 60.00 | FJP |
| | e-mail to client | 0.10 | 30.00 | FJP |
| | email from clients | 0.20 | 60.00 | FJP |
| | Telephone call to client | 0.10 | 30.00 | FJP |
| | Telephone call from client | 0.20 | 60.00 | FJP |
| | review postings on computer w defendants exhibits | 0.80 | 240.00 | FJP |
| May-12-09 | Receipt and review of gardiner email | 0.20 | 60.00 | FJP |
| | e-mail to gardiner | 0.20 | 60.00 | FJP |
| | email from gardiner | 0.10 | 30.00 | FJP |

|            |                                              |      |        |     |
|------------|----------------------------------------------|------|--------|-----|
|            | e-mail to gardiner                           | 0.10 | 30.00  | FJP |
|            | e-mail to client                             | 0.10 | 30.00  | FJP |
| May-13-09  | e-mail to client                             | 0.10 | 30.00  | FJP |
|            | email from client                            | 0.10 | 30.00  | FJP |
|            | email from client                            | 0.20 | 60.00  | FJP |
| May-19-09  | telephone conference with judge and counsel  | 0.40 | 120.00 | FJP |
|            | e-mail to and from counsel                   | 0.20 | 60.00  | FJP |
|            | e-mail to and from clients                   | 0.20 | 60.00  | FJP |
| May-20-09  | e-mail to counsel                            | 0.20 | 60.00  | FJP |
|            | e-mail to client                             | 0.10 | 30.00  | FJP |
| May-22-09  | Receipt and review of dual column jury charges | 1.30 | 390.00 | FJP |
|            | Legal Research actual damages front pay      | 0.80 | 240.00 | FJP |
|            | conference w gardiner                        | 1.10 | 330.00 | FJP |
|            | Telephone call to client                     | 0.20 | 60.00  | FJP |
| May-26-09  | Telephone call to client                     | 0.10 | 30.00  | FJP |
|            | e-mail to client                             | 0.10 | 30.00  | FJP |
| May-27-09  | Telephone call with Judge chambers           | 0.20 | 60.00  | FJP |
|            | review  jury charges per Judge               | 0.50 | 150.00 | FJP |
|            | Attendance at court                          | 1.40 | 420.00 | FJP |
|            | e-mail to clients                            | 0.20 | 60.00  | FJP |
|            | email from client                            | 0.10 | 30.00  | FJP |

| | | | | |
|---|---|---|---|---|
| May-28-09 | Telephone call with st jean message | 0.10 | 30.00 | FJP |
| | Telephone call with heimbach office | 0.10 | 30.00 | FJP |
| | Telephone call to client | 0.30 | 90.00 | FJP |
| | Telephone call to client | 0.20 | 60.00 | FJP |
| | Correspondence to st jean | 0.10 | 30.00 | FJP |
| | Correspondence to heimbach | 0.10 | 30.00 | FJP |
| May-30-09 | Legal Research : additional briefing | 5.80 | 1,740.00 | FJP |
| May-31-09 | Legal Research additional briefing | 0.80 | 240.00 | FJP |
| | Preparation of outline for additional briefing | 1.30 | 390.00 | FJP |
| Jun-01-09 | Attendance at court : equipment check | 0.80 | 240.00 | FJP |
| | Preparation of 1st draft of additional briefing | 4.40 | 1,320.00 | FJP |
| | Telephone call with counsel | 0.10 | 30.00 | FJP |
| | Telephone call with deputy clerk | 0.10 | 30.00 | FJP |
| | Legal Research jury demonstration | 2.10 | 630.00 | FJP |
| | Preparation of memorandum jury demonstration | 1.30 | 390.00 | FJP |
| Jun-02-09 | Telephone call with clerk | 0.10 | 30.00 | FJP |
| | amend draft of addditional legal briefing | 3.20 | 960.00 | FJP |
| | Telephone call with dr. heinbach | 0.10 | 30.00 | FJP |
| | Telephone call with dr. heinbach | 0.20 | 60.00 | FJP |
| | Correspondence to dr. heinbach | 0.20 | 60.00 | FJP |
| | e-mail to counsel | 0.10 | 30.00 | FJP |

| | | | | |
|---|---|---|---|---|
| | e-mail to clerk | 0.10 | 30.00 | FJP |
| | email from counsel | 0.10 | 30.00 | FJP |
| Jun-03-09 | Receipt and review of defendants opposition to jury dem | 0.80 | 240.00 | FJP |
| | e-mail to clerk | 0.10 | 30.00 | FJP |
| | email from clerk | 0.10 | 30.00 | FJP |
| | e-mail to client | 0.10 | 30.00 | FJP |
| | email from client | 0.10 | 30.00 | FJP |
| | Preparation of testimony outline: Pietrylo | 4.60 | 1,380.00 | FJP |
| | Preparation of testimony outline: Marino | 2.30 | 690.00 | FJP |
| | e-mail to clients | 0.10 | 30.00 | FJP |
| | email from clients | 0.10 | 30.00 | FJP |
| | Preparation of witness exhibit binders ( cont) | 1.20 | 360.00 | FJP |
| Jun-04-09 | Preparation of reply to jury demonstration | 1.20 | 360.00 | FJP |
| | Receipt and review of defendant's additional briefing | 1.60 | 480.00 | FJP |
| | Preparation of witness binders ( begin) | 1.20 | 360.00 | FJP |
| | Preparation of second notice in lieu subpoena | 0.20 | 60.00 | FJP |
| | e-mail to gardiner | 0.10 | 30.00 | FJP |
| Jun-05-09 | Preparation of witness binders | 1.30 | 390.00 | FJP |
| | e-mail to counsel | 0.10 | 30.00 | FJP |
| | email from counsel | 0.10 | 30.00 | FJP |
| | review anton and marano deposition for trial | 1.60 | 480.00 | FJP |

|          |                                                                                      |      |          |     |
| -------- | ------------------------------------------------------------------------------------ | ---- | -------- | --- |
|          | Preparation of st john outline ( begin)                                              | 2.30 | 690.00   | FJP |
| Jun-06-09 | Preparation of 1st draft of opening statement                                       | 3.60 | 1,080.00 | FJP |
| Jun-07-09 | Preparation of heinbach outline                                                     | 1.20 | 360.00   | FJP |
|          | Preparation of simring outline                                                       | 1.00 | 300.00   | FJP |
|          | Preparation of initial draft outline for closing                                     | 1.40 | 420.00   | FJP |
| Jun-08-09 | Preparation for trial                                                               | 8.20 | 2,460.00 | FJP |
| Jun-09-09 | Attendance at court : trial                                                          | 7.00 | 2,100.00 | FJP |
|          | Preparation of st jean and marano testimony outline                                  | 3.00 | 900.00   | FJP |
| Jun-10-09 | Attendance at court : trial                                                          | 7.00 | 2,100.00 | FJP |
|          | Legal Research : privacy charges                                                     | 5.20 | 1,560.00 | FJP |
| Jun-11-09 | Attendance at court : trial                                                          | 6.00 | 1,800.00 | FJP |
|          | edit proposed jury charges and verdict sheet                                         | 3.70 | 1,110.00 | FJP |
| Jun-12-09 | amend draft of legal position on jury charges and verdict sheet                      | 6.60 | 1,980.00 | FJP |
| Jun-13-09 | Preparation of summation first draft                                                 | 2.30 | 690.00   | FJP |
| Jun-15-09 | Attendance at court : charge conference and preparation of final charges and verdict sheet | 8.80 | 2,640.00 | FJP |
|          | Preparation of summation final form                                                  | 3.30 | 990.00   | FJP |
| Jun-16-09 | Attendance at court : trial                                                          | 6.00 | 1,800.00 | FJP |
| Jun-19-09 | Legal Research : application for attorney fees                                       | 1.40 | 420.00   | FJP |
| Jun-25-09 | Telephone call with boldt                                                            | 0.20 | 60.00    | FJP |
| Jun-26-09 | Receipt and review of counsel email                                                 | 0.10 | 30.00    | FJP |
|          | review counsel letter to court                                                       | 0.10 | 30.00    | FJP |

| Date | Description | Hours | Amount | |
|---|---|---|---|---|
| | Telephone call to client | 0.10 | 30.00 | FJP |
| | Legal Research : standard of review attorney fees and costs | 3.60 | 1,080.00 | FJP |
| Jun-29-09 | Receipt and review of court order | 0.10 | 30.00 | FJP |
| | Preparation of 1st draft of attorney affidavit fees and costs | 4.20 | 1,260.00 | FJP |
| | Telephone call to client | 0.10 | 30.00 | FJP |
| | Preparation of 1st draft legal brief: attorney fees application | 2.90 | 870.00 | FJP |
| Jun-30-09 | Preparation of 1st draft of attorney certification: rule 59 (e) | 0.80 | 240.00 | FJP |
| | Preparation of 1st draft legal brief: rule 59 (e) | 1.40 | 420.00 | FJP |
| Jul-06-09 | Telephone call from client | 0.30 | 90.00 | FJP |
| | Legal Research standard of review rule 50 & 59 | 1.80 | 540.00 | FJP |
| Jul-08-09 | Preparation of 1st draft of preliminary statement in opposition to defendants rule 50 & 59 motion | 0.80 | 240.00 | FJP |
| | amend draft of preliminary statement rule 50 motion | 0.20 | 60.00 | FJP |
| Jul-11-09 | Preparation of beginning of plaintiffs' opposition brief to defendant's rule 50 & 59 motion | 3.30 | 990.00 | FJP |
| Jul-15-09 | Receipt and review of defendants motion papers and trial transcript for use in opposition brief | 3.50 | 1,050.00 | FJP |
| | Preparation of 1st draft of statement of facts for brief | 2.80 | 840.00 | FJP |
| | Preparation of 1st draft of standard of review including legal research | 2.30 | 690.00 | FJP |
| Jul-16-09 | Preparation of first draft of legal arguments for brief | 3.90 | 1,170.00 | FJP |

Case 2:06-cv-05754-FSH-PS     Document 67-2     Filed 07/21/2009     Page 40 of 68

| Date | Description | | | |
|---|---|---|---|---|
| Jul-17-09 | Preparation of attorney certification in opposition | 0.20 | 60.00 | FJP |
| | Preparation of notice of motion rule 59 | 0.30 | 90.00 | FJP |
| | Preparation of notice of motion rule 54 | 0.30 | 90.00 | FJP |
| | Preparation of certification of service | 0.30 | 90.00 | FJP |
| | Preparation of proposed order | 0.50 | 150.00 | FJP |
| Jul-20-09 | amend draft of plaintiffs' opposition brief to defendant's 50/59 motion | 2.80 | 840.00 | FJP |
| | amend draft of attorney affidavit attorney fees | 0.80 | 240.00 | FJP |
| | amend draft of brief in support of attorney fees | 1.30 | 390.00 | FJP |
| | amend draft of attorney certification per rule 59 (e) | 0.20 | 60.00 | FJP |
| | amend draft of brief in support of rule 59 e motion | 0.30 | 90.00 | FJP |
| | Totals | 432.90 | $129,870.00 | |

**DISBURSEMENTS**

| Date | Description | Disbursements | Receipts |
|---|---|---|---|
| | Filing Fee | 350.00 | |
| Aug-30-07 | sheriff's fee : subpoena fee | 96.95 | |
| Jul-11-08 | transcript fee | 937.17 | |
| Jun-25-09 | transcript fee : Marino, St. Jean and Heimbach | 604.15 | |
| | Totals | $1,988.27 | $0.00 |

| | |
|---|---|
| **Total Fees & Disbursements** | **$131,858.27** |
| | |
| Previous Balance | $0.00 |
| Previous Payments | $0.00 |
| | |
| **Balance Due Now** | **$131,858.27** |

# EXHIBIT "C"

RAMP & PISANI, LLP

COUNSELLORS AT LAW

60 WESTERVELT AVENUE

P.O. BOX 249

TENAFLY, NEW JERSEY 07670

(201) 567-8877

FAX (201) 567-7053

KENNETH A. RAMP*

FRED J. PISANI

*MEMBER OF N.J. & N.Y. BAR

WEBSITE - WWW.RAMPANDPISANI.COM

E-MAIL - FPISANIATRANDP@AOL.COM

KRAMPATRANDP@AOL.COM

September 14, 2006

Doreen Marino
Brian Pietrylo
54 Sunnyside Avenue
Dumont, New Jersey 07628

**Re:  Marino/Pietrylo v. Hillstone Restaurant Group (Houston's)**

Dear Doreen and Brian:

It was a pleasure speaking with you the other day with regard to the above-captioned matter.  You have asked my firm to represent you in pursuit of your various employment claims against your former employer, Hillstone Restaurant Group (Houston's). We would be happy to undertake this representation based on the following conditions:

1.  You will not be required to pay for our services based on an hourly rate and monthly billing.  Instead, my firm will protect your legal rights and do all necessary legal work to properly represent you in this matter until conclusion based upon a contingent fee arrangement.  If my firm recovers money for you, either by way of settlement or trial, which is greater than your costs and expenses (see paragraph 2 below), you will pay my firm a legal fee.

2. The fee will be based on a percentage of the net recovery.  Net recovery is the total recovered on your behalf, minus your costs and expenses. The fee will be as follows:

- ♦  33-1/3% of the first $500,000.00 net recovery;

- ♦  30% of the next $500,000.00 net recovery;

- ♦  25% of the next $500,000.00 net recovery;

♦ 20% of the next $500,00 net recovery;

♦ Fees on net recoveries exceeding $2,000,000.00 will be determined by the court.

3. You will be responsible for all costs and expenses including, but not limited to, filing fees, costs of suit, expert fees, and the like. We will not, however, incur any expense in excess of $100.00 without your prior approval.

4. While we will use our best efforts to achieve a favorable result and believe, based upon the facts presented to us at this time, that you have a valid claim, you must understand that a favorable result cannot be guaranteed.

If these terms and conditions are satisfactory to you, please sign and return the enclosed copy of this letter in the envelope provided for your convenience.

If you have any questions with regard to the above, please feel free to contact me.

Very truly yours,

Fred J. Pisani

FJP/mnt
Enclosures

Agreed and Accepted:

By _____
    DOREEN MARINO

By _____
    BRIAN PIETRYLO

Dated: 9-15-06

Dated: 9-15-06

# EXHIBIT "D"

**McELROY, DEUTSCH, MULVANEY & CARPENTER, LLP**
**1300 Mount Kemble Avenue**
**P.O. Box 2075**
**Morristown, New Jersey  07962-2075**
**Attorneys for Defendant,**
**Hillstone Restaurant Group,**
**d/b/a/ Houston's**


UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| BRIAN PIETRYLO, et al, | : | Hon. Faith S. Hochberg, U.S.D.J. |
| | : | Hon. Patty Shwartz, U.S.M.J. |
| Plaintiff, | : | |
| | : | Civil Action No. 06-5754 (FSH) |
| vs. | : | |
| | : | **NOTICE OF MOTION TO DISMISS** |
| HILLSTONE RESTAURANT GROUP | : | **PLAINTIFFS' COMPLAINT WITH** |
| d/b/a HOUSTON'S, | : | **PREJUDICE PURSUANT TO** |
| | : | **FED. R. CIV. P. 12 (b)(6)** |
| Defendant. | : | |
| | : | Document Filed Electronically |

TO:   **FRED J. PISANI, ESQ.**
        RAMP & PISANO, LLP
        60 Westervelt Avenue
        P. O. Box 249
        Tenafly, New Jersey 07670
        Attorney for Plaintiffs

**SIR:**

**PLEASE TAKE NOTICE** that on Monday, February 12, 2007, at 9:00 o'clock in the

forenoon or as soon thereafter as counsel may be heard, defendant Hillstone Restaurant Group,

d/b/a Houston's ("Defendant") shall move before the Hon. Faith S. Hochberg, U.S.D.J., of the

United States District Court for the District of New Jersey, at the M.L. King, Jr. Federal Building

& U.S. Courthouse, 50 Walnut Street, Newark, New Jersey 07102, for an Order dismissing the

1

Complaint of Brian Pietrylo and Doreen Marino with prejudice pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

**PLEASE TAKE FURTHER NOTICE** that in support of its Motion, Defendant shall rely upon the Brief submitted herewith.

**PLEASE TAKE FURTHER NOTICE** that oral argument is requested.

**PLEASE TAKE FURTHER NOTICE** that a proposed form of Order is submitted herewith.

> **McELROY, DEUTSCH, MULVANEY
> & CARPENTER, LLP**
> 1300 Mount Kemble Avenue
> P.O. Box 2075
> Morristown, New Jersey
> (973) 993-8100
> Attorneys for Defendant
> Hillstone Restaurant Group,
> d/b/a Houston's


> By:    /s/_____
>           DONNA DUBETH GARDINER

Dated: January 17, 2007

# EXHIBIT "E"

**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| BRIAN PIETRYLO and<br>DOREEN MARINO | : | |
| Plaintiffs | : | Civil No. 06-3493 (FSH) |
| | : | |
| v. | : | |
| | : | **ORDER** |
| HILLSTONE RESTAURANT GROUP, | : | |
| D/B/A HOUSTON'S | : | |
| Defendant. | : | Date: August 23, 2007 |

This matter having come before the Court upon Defendant's January 17, 2007 Motion to

Dismiss Plaintiffs' Complaint and upon Plaintiffs' January 26, 2007 Cross Motion to Amend the

Complaint; and

it appearing that a motion to dismiss under Rule 12(b)(6) should be granted "if it appears

to a certainty that no relief could be granted under any set of facts which could be proved," *see*

*Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997);[1] and

it appearing that a motion for leave to amend must be freely granted when justice so

---

[1] Although a court does not need to credit a complaint's "bald assertions" or "legal
conclusions," it is required to accept as true all of the allegations in the complaint as well as all
reasonable inferences that can be drawn therefrom and view them in the light most favorable to
the plaintiff. *Morse*, 132 F.3d at 906, *citing Rocks v. City of Philadelphia*, 868 F.2d 644, 645 (3d
Cir. 1989). *See also In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429-30 (3d Cir.
1997). In evaluating a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the Court may
consider only the Complaint, exhibits attached to the Complaint, matters of public record, and
undisputedly authentic documents if the Plaintiff's claims are based on those documents.
*Pension Guaranty Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1992).

1

requires;[2] and

it appearing that the Defendant will not be prejudiced by granting Plaintiffs leave to amend,[3]

it appearing that Defendant argues that interception of the communications in the myspace chat group cannot be illegal because Defendant was granted access to the communications by one of the participants; and

it appearing that Plaintiffs' proposed amended complaint alleges that any consent was not freely given and that moreover Defendant's access to the relevant communications was not authorized; and

it appearing that Defendant argues that Plaintiffs' claim for wrongful termination cannot be sustained because Plaintiffs' speech is not protected speech and because Defendant is not a state actor; and

it appearing that Plaintiff claims that the wrongful termination claim rests on a question of whether the terminations were in violation of a clear mandate of public policy based on either a right to freedom of expression or a right to privacy; and

it appearing that a determination of Plaintiffs' claims depends on the facts and circumstances of Defendant's actions and motivations; and

it therefore appearing that, in accepting all of Plaintiffs' claims as true under the Rule 12(b)(6) standard, Plaintiffs' allegations in the amended complaint state a legal claim because if

---

[2] Fed. R. Civ. P. 15; <u>Foman v. Davis</u>, 833 S. Ct. 227, 226 (1962)

[3] <u>Eddy v. Virgin Islands Water & Power Authority</u>, 256 F.3d 204, 209 (3d Cir. 2001) (holding that leave to amend should be freely allowed unless the other party will be prejudiced).

there was no consent, the interception of communications could constitute a violation of the

wiretapping statutes and/or a violation of privacy;

**IT IS** on this 23rd day of August, 2007,

**ORDERED** that Defendant's Motion to Dismiss Plaintiffs' claims is **DENIED**; and it is

**ORDERED** that Plaintiffs' Cross Motion to Amend is **GRANTED**.


/s/ Faith S. Hochberg_____
**Hon. Faith S. Hochberg, U.S.D.J.**

# EXHIBIT "F"

**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| BRIAN PIETRYLO, et al., | : |
| Plaintiffs, | : Civil Case No. 06- 5754 (FSH) |
| v. | : **OPINION & ORDER** |
| HILLSTONE RESTAURANT GROUP d/b/a HOUSTON'S, | : Date: July 24, 2008 |
| Defendant. | : |

**HOCHBERG, District Judge**

This matter having come before the Court on a motion for summary judgment (Docket #28), pursuant to Fed. R. Civ. P. 56, by Defendants Hillstone Restaurant Group and this Court having reviewed the submissions of the parties without oral argument pursuant to Fed. R. Civ. P. 78; the Defendant's motion for summary judgment is granted in part and denied in part.

## I. BACKGROUND

Plaintiffs Brian Pietrylo ("Pietrylo") and Doreen Marino ("Marino") were employed by Defendant Hillstone Restaurant Group as servers. Defendant owns and operates Houston's restaurants including the Houston's at Riverside Square in Hackensack, New Jersey. Pietrylo created a group on MySpace.com ("Myspace") called the "Spec-Tator." Pietrylo stated in his initial posting that the purpose of the group would be to "vent about any BS we deal with out work without any outside eyes spying in on us. This group is entirely private, and can only be joined by invitation." Pietrylo then exclaimed "[l]et the s**t talking begin." The icon for the

1

group, Houston's trademarked logo, would appear only on the Myspace profiles of those who were invited into the group and accepted the invitation. Pietrylo invited other past and present employees of Houston's to join the group, including Plaintiff Marino. Once a member was invited to join the group and accepted the invitation, the member could access the Spec-Tator whenever they wished to read postings or add new postings.

Pietrylo also invited Karen St. Jean ("St. Jean"), a greeter at Houston's, to join the group; she accepted the invitation and became an authorized member of the group. While dining at the home of TiJean Rodriguez ("Rodriguez"), a Houston's manager, St. Jean accessed the group through her Myspace profile on Rodriguez's home computer and showed Rodriguez the Spec-Tator.

The details of how other managers got access to the Spec-Tator involves certain factual disputes between the parties. At some point, Robert Anton ("Anton"), a Houston's manager, asked St. Jean to provide the password to access the Spec-Tator, which she did. Although St. Jean states that she was never explicitly threatened with any adverse employment action, she stated that she gave her password to members of the management solely because they were members of management and she thought she "would have gotten in some sort of trouble." Anton used the password provided by St. Jean to access the Spec-Tator from St. Jean's Myspace page. Anton printed copies of the contents of the Spec-Tator.

The manner in which St. Jean's password was given to Robert Marano ("Marano"), a regional supervisor of operations for Houston's, is also disputed. Anton subsequently discussed the Spec-Tator with other members of senior management and human resources of Hillstone Restaurant Group. At some point, Anton may have asked St. Jean to provide the password again.

2

It is not clear whether Anton told St. Jean that he intended to show the Spec-Tator to other managers, but St. Jean testified that she understood that once the managers had access to the material, all of the managers would know about it.

The posts on the Spec-Tator included sexual remarks about management and customers of Houston's, jokes about some of the specifications ("specs") that Houston's had established for customer service and quality, references to violence and illegal drug use, and a copy of a new wine test that was to be given to the employees. Pietrylo explained in his deposition that these remarks were "just joking"; however, members of management, including Marano, testified that they found these postings to be "offensive." Marano also testified that he was concerned that the content of the Myspace group would affect the operations of Houston's, specifically by contradicting Houston's four core values, professionalism, positive mental attitude, aim to please approach, and teamwork. Marano subsequently terminated Pietrylo and Marino.

On November 30, 2006, Plaintiffs filed a complaint against Defendant alleging violations of the federal Wiretap Act (18 U.S.C. §§ 2510-22) (First Count), the parallel New Jersey Wiretapping and Electronic Surveillance Control Act (N.J.S.A. 2A:156A-3 and 4(d)) (Third Count), the federal Stored Communications Act (18 U.S.C. §§ 2701-11) (Second Count), the parallel provision of the New Jersey Act (N.J.S.A. 2A:156A-27) (Fourth Count), wrongful termination in violation of a clear mandate of public policy (Fifth Count), and common law tort of invasion of privacy (Sixth Count). Defendant filed a motion to dismiss on January 17, 2007, and Plaintiffs' filed a motion to amend complaint on February 20, 2007. The Court, in its Order of August 23, 2007, granted the motion to amend the complaint and denied the motion to dismiss. The Amended Complaint divided the Fifth Count into two counts of wrongful

3

termination in violation of a clear mandate of public policy: the new Fifth Count alleged

violation of a public policy favoring freedom of speech and the Sixth Count alleged violation of a

public policy against invasion of privacy. The Seventh Count (the former Sixth Count) alleged

violation of the common law tort for invasion of privacy. On December 20, 2007, Defendant

filed the instant motion for summary judgement. The Plaintiffs voluntarily dismissed the First

Count (violation of the federal Wiretap Act) and Third Count (violation of the New Jersey

Wiretapping and Electronic Surveillance Control Act) because they discovered that Defendant

did not intercept any electronic communications as required by the federal and state wiretapping

statutes. The Second, Fourth, Fifth, Sixth and Seventh Counts are before the Court on

Defendant's summary judgment motion.

## II. STANDARD OF REVIEW

Pursuant to Rule 56(c), a motion for summary judgment will be granted "if the pleadings,

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

any, show that there is no genuine issue as to any material fact and that the moving party is

entitled to a judgment as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247

(1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). An issue is "genuine" if the

evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson,

477 U.S. at 248; Celotex, 477 U.S. at 322-26; Doe v. Abington Friends Sch., 480 F.3d 252, 256

(2007). All facts and inferences must be construed in the light most favorable to the non-moving

party. Peters v. Delaware River Port Auth., 16 F.3d 1346, 1349 (3d Cir. 1994).

The party seeking summary judgment must initially provide the court with the basis for

its motion. Celotex Corp., 477 U.S. at 323. This requires the moving party to either establish

4

that there is no genuine issue of material fact and that the moving party must prevail as a matter

of law, or demonstrate that the nonmoving party has not shown the requisite facts relating to an

essential element of an issue on which it bears the burden. Id. at 322–23. Once the party

seeking summary judgment has carried this initial burden, the burden shifts to the nonmoving

party. To avoid summary judgment, the nonmoving party must demonstrate facts supporting

each element for which it bears the burden, and it must establish the existence of "genuine

issue[s] of material fact" justifying trial. Celotex Corp., 477 U.S. at 324.

Once a moving party satisfies its initial burden of establishing a prima facie case for

summary judgment under Fed. R. Civ. Pro. 56(c), the opposing party "must do more than simply

show that there is some metaphysical doubt as to material facts." Matsushita Elec. Indus. Co. v.

Zenith Radio Corp., 475 U.S. 574, 586 (1986). The nonmoving must set out specific facts

showing a genuine issue for trial using affidavits or as otherwise provided in Fed. R. Civ. Pro.

56(e).

## III. DISCUSSION

### A. Second and Fourth Counts for violations of federal and state Stored Communications statutes

Plaintiffs allege violations of the federal Stored Communications Act, 18 U.S.C. §§ 2701-

11 (Second Count), and the identical provision of the New Jersey Act, N.J.S.A. 2A:156A-27

(Fourth Count). These acts make it an offense to intentionally access stored communications

without authorization or in excess of authorization. Id. Both statutes provide an exception to

liability "with respect to conduct authorized . . . by a user of that service with respect to a

communication intended for that user." 18 U.S.C. § 2701(c)(2); accord N.J.S.A. 2A:156A-

27c(2).

5

Defendant argues that because St. Jean was an authorized user of the Spec-Tator who provided access on multiple occasions to Houston's management, there is no liability under these statutes based on the exception. Plaintiffs further contend that because Anton requested St. Jean's password while she was working at the workplace, St. Jean felt pressured to give Anton her password for fear of adverse employment action that may be taken if she did not comply. Plaintiffs argue that based on these circumstances, St. Jean's consent was not freely given based on an implied threat, and thus, access was not "authorized" under the meaning of the exception. Further, Plaintiffs argue that even if St. Jean gave her password to Anton, she did not give her password to Marano, who was responsible for terminating Pietrylo and Marino.

Congress and the New Jersey legislature provided little guidance on the definition of "conduct authorized" under these statutes. See Konop v. Hawaiian Airlines, Inc., 302 F.3d 868, 880 n.8 (9th Cir. 2002). Federal courts have equated "consent" under the Wiretap Act with "authorization" under the Stored Communications Act. In re DoubleClick, Inc. v. Privacy Litigation, 154 F. Supp. 2d 497, 514 (S.D.N.Y. 2001). Regarding the Wiretap Act, the First and Second Circuits have held that "Congress intended the consent requirement to be construed broadly." Griggs-Ryan v. Smith, 904 F.2d 112, 116 (1st Cir. 1990); States v. Amen, 831 F.2d 373, 378 (2d Cir. 1987).

The Ninth Circuit denied summary judgment in a case with strikingly similar facts; however, the issue there turned on whether or not the employees that authorized their employers to view the website were "users" of that website. Konop v. Hawaiian Airlines, Inc., 302 F.3d 868, 880 (9th Cir. 2002). In Konop, the plaintiff created a website that was critical of the company and provided invited two other employees to view the website. Id. at 873. These

6

employees never accepted their invitations to access the website until the vice president of

Hawaiian Airlines asked them to provide him with access the website. Id. The Ninth Circuit

reversed the District Court's grant of summary judgment because when viewing the facts in the

light most favorable to the plaintiff, the two invited employees never "used" the site and

therefore could not authorize access to the vice president. Id. at 880. Thus, the court there did

not consider whether or not the vice president's request that the employees allow him to access

the site with their names meant that his access was not authorized.

There is dearth of case law regarding what it means for authorization to be freely given

under the federal and state statutes regarding stored communications. Defendant analogizes to

criminal cases where consent to access is obtained from a criminal defendant with the promise of

leniency in prosecution. According to this reasoning, if there is nothing involuntary in the

criminal context where cooperation is rewarded, then St. Jean's cooperation with management in

this context cannot be considered involuntary. Plaintiff responds that in an employer-employee

relationship, there is a threat inherent in any demand made on an employee by management.

St. Jean testified[1] that if she didn't give the password to the manager who asked for it: "I

knew that something was going to happen. I didn't think that I was going to get fired, but I knew

that I was going to get in trouble or something was going to happen if I didn't do it." (Pisani

Certif., Ex. A.) She also testified that, although no one specifically told her she would be fired,

"[i]t wasn't an overwhelming feeling, but I knew. It sounds bad, but I didn't want to lose my job.

. . . I didn't want to lose my job for not cooperating with them." (Id.) When asked if she was

"following orders" in giving Houston's management her password, St. Jean stated, "I wasn't

---

[1]This deposition of Karen St. Jean was taken on August 20, 2007.

7

following orders. They asked me and I didn't know what else to do so I just gave it to them."

(Id.) When asked if she felt pressured into giving her password, St. Jean explained "[n]o and

yes," yet later explained that Houston's "would have kept on pressuring me and I'm not good

under pressure." (Id.) Additionally, St. Jean testified that she "pretty much thought after I gave

him [Anton] the password all the managers were going to see it. (Id.)[2]

Under these circumstances, St. Jean's testimony regarding whether her consent was

voluntary demonstrates a material issue of disputed fact. If her consent was only given under

duress, then the Defendants were not "authorized" under the terms of the statute. Because of this

disputed factual issue, summary judgment is denied as to the Second and Fourth Count.

**B. Fifth and Sixth Count for Wrongful Termination in Violation of a Clear Mandate of Public Policy**

### 1. Freedom of Speech (Fifth Count)

Plaintiffs allege wrongful termination in violation of a clear mandate of public policy.

They argue that the Spec-Tator was a private group where employees could exercise their right to

free speech, and that commenting and criticizing their employers is protected speech. (Am.

Compl. ¶ 30-34.) Defendant argues that Houston's is a private employer, not a state actor, and

that the constitutional obligations are directed only at state action. Defendant further argues that

---

[2] In a declaration submitted in connection with the current motion, St. Jean provided additional testimony. (St. Jean Decl., Jan. 7, 2008.) St. Jean stated that she never believed high level personnel in Houston's, such as Robert Marano, Tino Ciambriello (Vice President of Operations) and Michael Lamb (Director of Human Resources), would be given access to her MySpace account. (St. Jean Decl., ¶¶ 6-9.) Additionally, St. Jean stated that she felt violated by Houston's "impermissibly" taking her information to use it to "ease drop and spy" on the Spec-Tator. (St. Jean Decl. ¶ 10.) Because the Court finds that St. Jean's deposition testimony creates a sufficient disputed issue of material fact to preclude summary judgment, the Court need not rule on Defendants' contention that the supplemental declaration submitted by St. Jean should be excluded as contradictory and self-serving. This credibility determination will be left to the jury.

8

even if Plaintiffs were public employees, their speech is not protected because it does not touch upon a matter of public concern. Defendant suggests that occasional references to minimum wage are insufficient to demonstrate that the speech exercised on the Spec-Tator is a matter of public concern. Moreover, Defendant points out the undisputed fact that the majority of the postings on the Spec-Tator are derogatory remarks about both customers and management, as well as references to drug abuse.

In general, at-will employees may be terminated at any time with or without cause. If, however, an at-will employee is terminated for a reason that implicates a "clear mandate of public policy," the employee may have a claim for wrongful discharge. Pierce v. Orthro Pharmaceutical Corp., 84 N.J. 58, 72 (N.J. 1980). An at-will employee has a heavy burden to prove a clear mandate of public policy that was violated by his or her termination. New Jersey courts have held that a claim for wrongful termination based on a clear mandate of public policy requires that the termination of an employee must implicate more than just the private interests of the parties. DeVries v. McNeil Consumer Products Co., 250 N.J. Super. 159 (App. Div. 1991); House v. Carter-Wallace, Inc., 232 N.J. Super. 42, 48-49 (App. Div. 1989); Warthen v. Toms River Community Memorial Hospital, 199 N.J. Super 18, 29 (App. Div. 1985). Under the United States Constitution, the First Amendment protections for freedom of speech are directed only to state action, not to private action. See Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49-50 (1999); DeShaney v. Winnebago County Dep't of Soc. Servs., 489 U.S. 189 (1989). New Jersey state courts have not addressed whether or not a private employee may base a wrongful termination claim based on alleged interference with freedom of speech as protected by the New

Jersey Constitution. <u>See</u> <u>Wiegand v. Motiva Enters., LLC</u>, 295 F. Supp. 2d 465, 473-74 (D.N.J. 2003).[3]

The Third Circuit has held that the freedom of speech protections are not absolute even for public employees. <u>Azzaro v. County of Allegheny</u>, 110 F.3d 968, 976 (3d Cir. 1997). First Amendment protections extend to a public employee who speaks about an issue of public concern, as long as the interests of the employee outweigh the government's interests in efficiency of operation. <u>Curinga v. City of Clairton</u>, 357 F.3d 305, 310-11 (3d Cir. 2004). The Supreme Court has stated, "the First Amendment does not require a public office to be run as a roundtable for employee complaints over internal office affairs." <u>Connick v. Myers</u>, 461 U.S. 138, 149 (1983). <u>See</u> <u>Pickering v. Bd. of Educ.</u>, 391 U.S. 563, 568 (1968). Speech related to private employment matters is not considered a mater of public concern. <u>See</u> <u>Connick</u>, 461 U.S. at 146 (speech on merely private employment matters is unprotected).

The Third Circuit has also provided a three step test for a *public* employees retaliation claim based on protected activity. <u>Baldassare v. New Jersey</u>, 250 F.3d 188, 195 (3d Cir. 2001). First, for issues concerning freedom of speech, the employee must show that the speech involved an issue of public concern. <u>Id.</u> Second, a plaintiff must show that "his interest in the speech outweighs the state's countervailing interest as an employer in promoting efficiency of the public service it provides through its employees. <u>Id.</u> Third, the protected activity must be a substantial or the motivating factor in the retaliation. <u>Id.</u>

---

[3] The court decided <u>Wiegland</u> on other grounds and did not determine whether private employees have a cause of action for wrongful termination based on protections for freedom of speech. Moreover, the Court finds that even if Plaintiffs here were public employees, they would have no cause of action in this case; therefore, the Court need not determine whether private employees ever have a cause of action based on protections for freedom of speech.

10

Plaintiffs have not adduced genuine material facts to support the Fifth Count. Even if Houston's were a public employer, Plaintiffs have failed to adduce sufficient facts from which a reasonable jury could find that the speech on the Spec-Tator implicated a matter of public concern.

### 2. Invasion of Privacy (Sixth Count)

Plaintiffs allege wrongful termination in violation of a clear mandate of public policy based on invasion of privacy under New Jersey common law. (Am. Comp. ¶ 35-36.) Defendants argue that Plaintiffs have failed to identify a source of public policy underlying this claim.

Plaintiffs rely on two cases for their privacy-based Pierce claim. They cite to the New Jersey Supreme Court in Hennessy v. Coastal Eagle Point Oil Co. 129, N.J. 81 (1992). In Hennessy, a case claiming invasion of privacy based on the employer's urinalysis testing, the court said that privacy may serve as a source of public policy, but that courts should balance the privacy interests against the interests of the employer. Id. at 99, 102. Because the court found that the employer's interest in deterring drug use was substantial, the court found that Hennessy's discharge did not fall under the public policy exception for the general rule that an employer can terminate an at-will employee at any time for whatever reason. Id. at 107. Plaintiffs also rely on the Third Circuit's holding that requiring an employee to submit to urinalysis testing and searches of personal property as part of a new drug prevention policy may violate public policy if the employer invaded the employee's privacy. Borse v. Pierce, 963 F.2d 611, 628 (3d Cir. 1992).

A right to privacy may be a source of "a clear mandate of public policy" that could support a claim for wrongful termination; however, these privacy interests will be balanced against the employer's interests in managing the business.

11

Plaintiffs created an invitation-only internet discussion space. In this space, they had an expectation that only invited users would be able to read the discussion. There is a disputed issue of material fact as to whether St. Jean voluntarily provided authorization to Defendant to access the website. This disputed fact is central to central to the cause of action asserted in the Sixth Count, and summary judgment is therefore denied on the Sixth Count.

### C. Seventh Count for Violation of Common Law Tort of Invasion of Privacy

Plaintiffs claim that by viewing their private website, Defendant impermissibly intruded on their "seclusion or solitude, and/or private affairs," and this intrusion would be highly offensive to a reasonable person. (Am. Compl. ¶ 37-40.) Defendant argues St. Jean, an authorized user of the Spec-Tator, authorized Defendant to view the website. Further, Defendant contends that because most of the information on the Spec-Tator was public, there was no intrusion on anything private. Defendant also argues that Plaintiffs did not have a reasonable expectation, on an objective standard, that the Spec-Tator would remain private.

To prevail on a claim for intrusion upon Plaintiffs's seclusion or private affairs, Plaintiffs must prove that their solitude of seclusion or private affairs were infringed, and that the infringement would highly offend a reasonable person. Bisbee v. John C. Conover Agency Inc., 186 N.J. Super. 335, 339 (App. Div. 1982) (citing 3 RESTATEMENT (SECOND) OF TORTS § 652B). New Jersey courts have found that where a plaintiff consents to the invasion, this negates the invasion of privacy claim. Hall v. Heavey, 195 N.J.Super. 590, 597 (App.Div. 1984). New Jersey courts have also held the invasion must highly offend a reasonable person, and that "expectations of privacy are established by general social norms." White v. White, 344 N.J.

12

Super. 211, 223 (Ch. Div. 2001). This expectation of privacy must be objectively reasonable and a plaintiff's subjective belief that something is private is irrelevant. Id.

Like the Second and Fourth Counts based on statutory stored communication laws, the ability of Plaintiffs to recover on this Seventh Count for invasion of privacy turns on the disputed issue of whether or not St. Jean gave "consent" for Defendant to view the Spec-Tator. Additionally, the question of the reasonableness of the Plaintiffs' expectations of privacy is a question of fact for the jury to decide. For these reasons, the Court denies Defendant's motion for summary judgment on the Seventh Count.

Therefore, **IT IS** on this 24th day of July 2008, hereby

**ORDERED** that Counts One and Three of the Amended Complaint are **DISMISSED WITH PREJUDICE**; and it is

**ORDERED** that Defendant's motion for summary judgment in **GRANTED** as to Count Five of the Amended Complaint; and it is

**ORDERED** that Defendant's motion for summary judgment is **DENIED** as to Counts Two, Four, Six, and Seven of the Amended Complaint; and it is

**ORDERED** that a date shall be set for arbitration to commence within 45 days.

__/s/ Hon. Faith S. Hochberg_____
Hon. Faith S. Hochberg, U.S.D.J.

13

# EXHIBIT "G"

**NOT FOR PUBLICATION**

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| BRIAN PIETRYLO, et al., | : | |
| | : | |
| Plaintiffs, | : | Hon. Faith S. Hochberg |
| | : | |
| | : | Civil No. 06-5754 (FSH) |
| v. | : | |
| | : | **ORDER** |
| HILLSTONE RESTAURANT GROUP d/b/a | : | |
| HOUSTON'S, | : | |
| | : | Date: September 24, 2008 |
| Defendant. | : | |

**HOCHBERG, District Judge:**

This matter comes before the Court upon Defendant's Motion for Reconsideration of this Court's July 24, 2008 Opinion and Order, which granted in part and denied in part Defendant's Motion for Summary Judgment; and

it appearing that a Motion for Reconsideration is governed by Local Civil Rule 7.1(i); and

it appearing that Local Civil Rule 7.1(i) provides for the reconsideration of an order if the motion is filed within 10 days after entry of the disputed order; and

it appearing that the purpose of a motion for reconsideration is "to correct manifest errors of law or fact or to present newly discovered evidence," Harsco Corp. v. Zlotnicki, 779 F.2d 906, 909 (3d Cir. 1985); see also, Shoenfeld Asset Mgt. v. Cendent Corp., 161 F. Supp. 2d 349, 352 (D.N.J. 2001), Yurecko v. Port Authority Trans-Hudson, 2003 WL 22001196 at * 2 (D.N.J. Aug. 18, 2003); and

it appearing that the Rule requires that the moving party set forth "concisely the matters or controlling decision which counsel believes the [Court] has overlooked," G-69 v. Degnan, 748 F. Supp. 274, 275 (D.N.J. 1990); and

it appearing that "a party seeking reconsideration must show more than a disagreement with the Court's decision," G-69 v. Degnan, 748 F. Supp. at 275; and

it appearing that "a mere 'recapitulation of the cases and arguments considered by the court before rendering its original decision'" does not warrant reargument, Elizabethtown Water Co. v. Hartford Casualty Ins. Co., 18 F. Supp. 2d 464, 466 (D.N.J. 1998) (quoting Carteret Savings Bank F.A. v. Shushan, 721 F. Supp. 705, 709 (D.N.J. 1989)); and

it appearing that a court may grant a properly filed motion for reconsideration for one of three reasons: (1) an intervening change in the controlling law has occurred; (2) evidence not previously available has become available; or (3) it is necessary to correct a clear error of law or prevent manifest injustice, Database America v. Bellsouth Advertising & Publ'g., 825 F. Supp. 1216, 1220 (D.N.J. 1993) (citing Weyerhaeuser Corp. v. Koppers Co., 771 F. Supp. 1406, 1419 (D. Md. 1991)); see also, Carmichael v. Emerson, 2004 U.S. Dist. Lexis 11742 (D.N.J. May 21, 2004), Milletta v. United States, 2005 WL 1318867 (D.N.J. May 27, 2005); and

it appearing that a motion for reconsideration is improper when it is used "to ask the Court to rethink what it had already thought through -- rightly or wrongly," Ciba-Geigy Corp. v. Alza Corp., 1993 WL 90412, *1 (D.N.J. March 25, 1993); Oritani Sav. & Loan v. Fidelity & Deposit Co., 744 F. Supp. 1311, 1314 (D.N.J. 1990), rev'd on other grounds, 989 F.2d 635 (3d Cir. 1993); and

it appearing that because reconsideration of a judgment after its entry is an extraordinary remedy, motions to reconsider or reargue are granted "very sparingly," Maldonado v. Lucca, 636

F. Supp. 621, 630 (D.N.J. 1986); and

it appearing that disagreement with the Court's initial decision as the basis for bringing a

motion "should be dealt with in the normal appellate process, not on a motion for reargument,"

Florham Park Chevron, Inc. v. Chevron U.S.A.,Inc., 680 F. Supp. 159, 163 (D.N.J. 1988); and

it appearing that (1) there has been no intervening change in controlling law; (2)

Appellants have not presented new evidence that was not available for the Court to consider; and

(3) there has been no clear error of law or manifest injustice;[1]

**IT IS** therefore on this 24th day of September, 2008,

**ORDERED** that Appellant's August 8, 2008 Motion for Reconsideration of the Court's

July 24, 2008 Opinion and Order is **DENIED.**


                                        **/s/ Faith S. Hochberg**

                                        Hon. Faith S. Hochberg, U.S.D.J.


---

[1] Defendant argues that the Court's use of the word "duress" in its Opinion and Order indicates that the Court applied the legal doctrine of "duress" in reaching its decision. This argument is incorrect. As Defendant's own motion indicates, the doctrine of duress is a principle of contract law which is not applicable to the current case. By choosing to use the word "duress," the Court was not suggesting that the doctrine was applicable or formed the basis for the Opinion. Instead, the Court was simply using ordinary semantics in explaining that there remained a disputed issue of material fact concerning whether or not Ms. St. Jean voluntarily consented to and authorized Defendant's access the restricted website.