NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| BRIAN PIETRYLO and DOREEN MARINO, | : |
| Plaintiffs, | : |
| v. | : Civil Case No. 06-5754 (FSH) |
| HILLSTONE RESTAURANT GROUP d/b/a HOUSTON'S, | : **OPINION** |
| | : Date: September 25, 2009 |
| Defendant. | : |

**HOCHBERG, District Judge:**

This matter comes before the Court upon Defendant's motion for judgment as a matter of law pursuant to Fed. R. Civ. P. 50(b) or, in the alternative, for a new trial pursuant to Fed. R. Civ. P. 59. The Court has considered the parties' submissions pursuant to Fed. R. Civ. P. 78.

**I.      Procedural Background**

In the Complaint, Plaintiffs alleged: (1) violations of the federal Wiretap Act (18 U.S.C. §§ 2510-22); (2) violations of the parallel New Jersey Wiretapping and Electronic Surveillance Control Act (N.J.S.A. 2A:156A-3, et. seq.); (3) violations of the federal Stored Communications Act (the "SCA") (18 U.S.C. §§2701-11); (4) violations of the parallel provision of the New Jersey Act (N.J.S.A. 2A:156A-27; (5) wrongful termination in violation of a clear mandate of public policy; and (6) common law invasion of privacy. Plaintiffs voluntarily dismissed their claims alleging wiretapping after discovery showed that Defendant did not intercept any

electronic communications. On July 25, 2008, this Court granted in part and denied in part Defendant's motion for summary judgment.

On June 9, 2009, a jury trial commenced to determine whether the Defendants (1) violated the federal or state Stored Communications Acts, (2) invaded Plaintiffs' privacy, and/or (3) wrongfully terminated Plaintiffs in violation of public policy. The jury returned a verdict in favor of Plaintiffs on the Stored Communications Acts claims, finding that Defendant had, through its managers, knowingly or intentionally or purposefully accessed the Spec-Tator (a chat group on MySpace.com, accessed by invitation and then the members' MySpace accounts and passwords) without authorization on five occasions. The jury found that Defendant had not, however, invaded Plaintiffs common law right of privacy.[1] The jury further found that Defendant had acted maliciously, leading to a right to punitive damages.

The jury awarded $2,500 and $903 in compensatory damages to Pietrylo and Marino, respectively. By stipulation of the parties, the award of punitive damages equals four times the amount of compensatory damages awarded by the jury.

Defendant filed the instant motion on July 3, 2009, arguing that based upon the evidence presented at trial, none of the jury's findings in Plaintiffs' favor can be sustained. Specifically, Defendant asserts that there was no evidence upon which the jury could reasonably conclude that the managers knowingly accessed the Spec-Tator without authorization. Defendant further asserts that there was no evidence upon which the jury could reasonably find that Houston's conduct was malicious, as required to sustain an award of punitive damages.

---

[1] Because the jury found that Defendant had not invaded Plaintiffs' common law right of privacy, it was agreed by the parties that it was not necessary for the jury to reach a determination on Plaintiffs' allegations of wrongful termination in violation of the public policy of privacy rights.

**II.     Legal Standard**

    **A.     Motion for Judgment as a Matter of Law**

A motion for judgment as a matter of law under Fed. R. Civ. P. 50(b) "should be granted only if, viewing the evidence in the light most favorable to the non-movant and giving it the advantage of every fair and reasonable inference, there is insufficient evidence from which a jury reasonably could find" for the non-movant. *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1166 (3d Cir. 1993); *Mandile v. Clark Material Handling Co.*, 131 Fed. Appx. 836, 838 (3d Cir. 2005).[2]

In making this determination, "the court may not weigh the evidence, determine the credibility of the witnesses, or substitute its version of the facts for the jury's version." *Lightning Lube*, 4 F.3d at 1166 (citing *Fineman v. Armstrong World Indus., Inc.*, 980 F.2d 171, 190 (3d Cir. 1992)).

"The question is not whether there is literally no evidence supporting the party against whom the motion is directed but whether there is evidence upon which the jury could properly find a verdict for that party." *Id*. (quoting *Patzig v. O'Neil*, 577 F.2d 841, 846 (3d Cir. 2004) ("A judge may overturn a jury verdict only when, as a matter of law, the record is critically deficient of that minimum quantity of evidence from which a jury might reasonably afford relief.") (quotations omitted)).

---

[2] Rule 50 provides that after a party has been heard on an issue at a jury trial, the court may order judgment as a matter of law if it finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue.  Fed. R. Civ. P. 50(a).  Rule 50(b) involves renewing the motion after trial.  In pertinent part, Rule 50(b) provides that: "If the court does not grant a motion for judgment as a matter of law made under Rule 50(a), the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion."  Fed. R. Civ. P. 50(b).

3

### B. Motion for a New Trial

Fed. R. Civ. P. 59(a) allows a party to seek another form of relief from a judgment by filing a motion for a new trial. Rule 59 allows the court to award a new trial "on all or part of the issues – and to any party - … after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). "Grounds upon which a new trial may be granted include: (1) that the verdict is against the weight of the evidence; (2) that the damages are excessive; or (3) that the district court made substantial errors in the admission or rejection of evidence or in its instructions to the jury." *Winnicki v. Bennigan's*, No. 01-3357, 2006 U.S. Dist. LEXIS 61206, at *3 (D.N.J. Aug. 28, 2006) (citing *Montgomery Ward & Co. v. Duncan*, 311 U.S. 243, 251 (1940)). The district court has discretion on whether or not to grant a new trial. *Id*. at *2 (citing *Wagner v. Fair Acres Geriatci Ctr.*, 49 F.3d 1002, 1017 (3d Cir. 1995)).

"New trials because the verdict is against the weight of the evidence are proper only when the record shows that the jury's verdict resulted in a miscarriage of justice or where the verdict, on the record, cries out to be overturned or shocks our conscience." *Vargo v. Coslet*, 126 Fed. Appx. 533, 534 (3d Cir. 2005) (quoting *Klein v. Hollings*, 992 F.2d 1285, 1290 (3d Cir. 1993)). "Unless justice requires otherwise, no error in admitting or excluding evidence – or any other error by the court or a party – is ground for granting a new trial." Fed. R. Civ. P. 61. "At every stage of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights." *Id*. Moreover, courts in this Circuit have held that "a party who fails to object to errors at trial waives the right to complain about them following trial." *Waldorf v. Shuta*, 142 F.3d 601, 629 (3d Cir. 1998).

4

### III. Discussion

#### A. Defendant's Statutory Liability

In order to prevail on their statutory claims, Plaintiffs were required to offer sufficient evidence to allow the jury to conclude that Houston's managers knowingly, intentionally, or purposefully accessed the Spec-Tator without authorization. According to the SCA, if access to the Spec-Tator was authorized "by a user of that service with respect to a communication of or intended for that user," there is no statutory violation. 18 U.S.C. § 2701(c)(2). Defendant now argues (1) that there was no evidence that an invited member of the chat group did not authorize the Houston's managers to use her password to access the Spec-Tator; and (2) that Plaintiffs presented no evidence that Houston's managers possessed the requisite state of mind for their actions to constitute violations of the statutes at issue.

In particular, Defendant emphasizes that St. Jean (the key witness on the issue of authorization) was undisputedly an authorized user of the Spec-Tator and showed the website to Rodriguez on her own. Defendant further emphasizes that St. Jean willingly provided her MySpace.com log-in information to Anton and Marano (indirectly through Rodriguez) without indicating any reservations to them. This evidence, Defendant argues, indicates that St. Jean authorized Anton, Marano and other Houston's employees to access the Spec-Tator and precludes a finding that Houston's managers accessed the Spec-Tator knowing that such access was unauthorized.

In response, Plaintiffs argue that there is ample evidence in the record from which a reasonable jury could find, and indeed did find, that Defendant violated the federal SCA and parallel New Jersey Statute. Plaintiffs emphasize that because there was no documentary

5

evidence concerning authorization, the jury was required to rely on the testimony and demeanor of the witnesses.  St. Jean's testimony, in particular, was critical, in establishing that she had not authorized access to the Spec-Tator.  St. Jean testified that she felt she had to give her password to Anton because she worked at Houston's and for Anton.  She further testified that she would not have given Anton her password if he had not been a manager, and that she would not have given her information to other co-workers.  Furthermore, when asked whether she felt that something would happen to her if she did not give Anton her password, she answered "I felt that I probably would have gotten in trouble."  Transcript of Proceedings at 94-96, *Pietrylo v. Hillstone Restaurant Group*, No. 06-5754 (FSH) (June 10, 2009) ("June 10 Transcript).  The jury could reasonably infer from such testimony that St. Jean's purported "authorization" was coerced or provided under pressure.  As a result, this testimony provided a basis for the jury to infer that Houston's accessing of the Spec-Tator was not, in fact, authorized.[3]

In addition, St. Jean's testimony, taken in conjunction with the testimony provided by Anton and Marano, provided evidence upon which the jury could reasonably infer that Houston's managers acted with the state of mind proscribed by the federal and state statutes.  Evidence was presented that Houston's managers accessed the Spec-Tator on several different occasions, even though it was clear on the website that the Spec-Tator was intended to be private and only accessible to invited members.  A reasonable jury could conclude that these repeated visits to the Spec-Tator were intentional or purposeful, as opposed to accidental, and that Houston's

---

[3] In reaching this conclusion, the Court is not, however, crediting Plaintiffs' argument that the jury rejected testimony provided by Robert Marano because the jurors first requested a copy of the transcript of Marano's testimony for review but subsequently rescinded that request.  The jury may not have re-read Marano's testimony, but that fact alone does not mean that the jury did not consider his testimony.  In short, an abandoned request for a read back cannot be relied upon to mean anything.

6

managers knew that they were not authorized to access the contents of the Spec-Tator from the manner and means that Anton and Marano used to get access to the password-protected MySpace page of St. Jean.

Evidence was presented that Houston's managers continued to access the Spec-Tator after realizing that St. Jean had reservations about having provided her log-in information after being asked for it by Anton while at work. Robert Marano, for example, testified that he knew that "[St. Jean] was very uneasy with the fact that she had given me and the rest of the managers her password," and that she was worried about the consequences of having provided such information. June 10 Transcript at 191-92. On the basis of such testimony, the jury could reasonably infer that Houston's managers knew that they were not actually authorized to continue accessing the Spec-Tator through St. Jean's MySpace password, but continued to do so anyway. The jury found that Houston's managers unlawfully accessed the Spec-Tator five separate times, further supporting their finding that they accessed it without authorization and not by mistake or accident. This Court does not re-weigh the evidence or reevaluate the credibility of the witnesses. This Court does not find that the jury's verdict resulted in a miscarriage of justice, nor that it cries out to be overturned nor that it shocks the conscience, because the verdict was based in large part upon credibility determinations made by the jury and because such determinations are fully within the province of the jury. Accordingly, the Court finds that there was sufficient evidence upon which the jury could find a verdict for Plaintiffs on their statutory claims and denies Defendant's motion for judgment as a matter of law and Defendant's motion for a new trial. *See Jeckell v. Crestwood Area School District*, No. 04-1135, 2008 WL 4372792, at *5-6 (M.D. Pa. Sept. 18, 2008).

### B.  Compensatory Damages

Defendant further argues that the evidence presented at trial did not support the jury's award of lost wages of $2,500 and $903 to Plaintiffs Pietrylo and Marino, respectively. Defendant urges the Court to enter judgment vacating the jury's award of compensatory damages as a matter of law because (a) Plaintiffs rejected offers for "reasonably similar" employment at a different restaurant on the day they were fired from Houston's; (b) Plaintiffs earned as much or more working for Morton's Steakhouse, where they ultimately accepted job offers, as they had while working for Houston's; and (c) because any reduction in Marino's wages while working for Morton's should be attributed to a voluntary reduction in hours during 2007 while she attempted to seek work as a yoga instructor.  Defendant argues, in sum, that Plaintiffs failed to mitigate their damages and, as a result, are not entitled to compensatory damages as a matter of law.

Plaintiffs do not dispute that they were required to mitigate their damages and seek comparable employment.  The jury, after proper instruction on the law of mitigation, chose to award modest compensatory damages.  Plaintiffs emphasize that evidence was presented at trial to show that they immediately sought alternative employment opportunities, but that the offers they initially received, from the Legal Seafood restaurant located in same shopping center as Houston's, were not comparable because Plaintiffs were told that they would, in totality, earn less.  June 10 Transcript at 235-36.  The jury could have reasonably inferred from Marino's testimony regarding her casual conversation with her friend who was a manager at Legal Seafood that the job was not equivalent to her job at Houston's. Moreover, the amount awarded was the exceptionally modest sum of $903.  Plaintiffs continued to look for suitable alternative

employment and ultimately accepted jobs at Morton's, which they considered comparable.

The jury was fully instructed on the issue of mitigation of damages, including that "Plaintiffs have a duty under the law to 'mitigate' their damages" and that "Plaintiffs must take advantage of any reasonably similar opportunity that may have existed under the circumstances to reduce or minimize the loss or damage caused by Houston's." The jury was also instructed that "[i]t is Houston's burden to prove that Plaintiffs have failed to mitigate." As was appropriate, this instruction left it to the jury to decide whether Plaintiffs sufficiently attempted to mitigate their damages or whether Defendant proved that they failed to mitigate. There was evidence presented that the two Plaintiffs made some effort to mitigate their damages, and that those efforts were successful in limiting their claim for compensatory damages resulting from their termination from Houston's to small sums, even if they turned down the first job offers they received. Viewing the evidence presented at trial in the light most favorable to Plaintiffs and giving such evidence the advantage of every fair and reasonable inference, the Court concludes that there was sufficient evidence from which a jury reasonably could find that Plaintiffs were entitled to compensatory damages in the modest amounts awarded.[4]

---

[4] The Court is not persuaded that judgment as a matter of law is required because Plaintiffs earned more working for Morton's Steakhouse, where they ultimately accepted employment, than they had at Houston's or because Plaintiff Marino voluntarily reduced her earnings at Morton's by seeking alternative employment as a yoga instructor. The jury awarded Plaintiffs compensatory damages based on the loss incurred during the short time period they were unemployed as a result of their termination from Houston's. The parties stipulated a very modest maximum amount to compensate for this loss and the jury awarded that amount. The jury clearly found that Defendants failed to sustain their burden of proof that Plaintiffs failed to mitigate their damages during this short time period of unemployment. The role of the Court on a motion for Judgment as a Matter of Law is not to "weigh the evidence" or "determine credibility of witnesses," only to determine if the moving party has proved that "the record is critically deficient of that minimum quantity of evidence from which a jury might reasonably afford relief." *Lightning Lube*, 4 F.3d at 1166. Based on the evidence presented here, the Defendant has not met this heavy burden.

The Court will not grant a new trial based on an alleged failure to mitigate damages, because the jury's verdict is not against the clear weight of the evidence. Especially in light of the modest amount of damages awarded by the jury, amounts that were capped by stipulation of the parties at $2,500 and $903 for Pietrylo and Marino, respectively, there is nothing in the jury's award that shocks this Court's conscience or cries out to be overturned.

### C. Punitive Damages

Finally, Defendant seeks to overturn the jury's determination that Plaintiffs are entitled to punitive damages, arguing that there was no evidentiary support for the finding that Houston's access of the Spec-Tator was malicious. This argument is again based on Defendant's view of Karen St. Jean's testimony, as set forth above, and Defendant's fervent belief that the Houston's managers pursued access to the Spec-Tator for legitimate business reasons.

Punitive damages are available under the federal Stored Communications Act "[i]f the violation is willful or intentional." 18 U.S.C. § 2707(c). The New Jersey statute contains a similar provision. During the jury charge conference, the parties agreed to the proper instructions to be given to the jury regarding these statutory standards. The verdict sheet, also agreed to by the parties, included two predicate factual questions concerning punitive damages. After the jury made its finding on the substantive counts, the jury was instructed to answer these predicate questions only if they had found Houston's liable on the substantive count. The two predicate questions asked the jury whether they found the conduct of Houston's to be "wanton or willful," or "malicious."[5]

---

[5] Wanton or willful conduct was defined, by consent of both sides, as "a deliberate act or omission with knowledge or a high degree of probability of harm to another who foreseeably might be harmed by defendant's acts or omissions or reckless indifference to the consequences of the acts or omissions. The conduct must be so morally reprehensible that it implies a criminal indifference to civil obligations." Malicious conduct was defined, by consent of both sides, as

Although Houston's certainly does have a right and obligation to protect its employees and managers from harassment or humiliation, and to protect the core values of the restaurant, the jury's findings indicate that the jury did not believe that the method used by Houston's to protect those values was proper conduct, finding that Houston's knowingly accessed the stored communications without authorization five times. The jury was not persuaded by the well-tried case of Houston's regarding its claimed lack of knowledge of "non-authorization." And, in evaluating the predicate questions that the jury thereafter addressed, the jury had sufficient evidence from which it could reasonably infer that Houston's acted maliciously in repeatedly accessing the Spec-Tator via St. Jean's password. St. Jean had testified, in sum and substance, that she did not feel free to deny her boss's request for her account and password. In addition, the inferences from her testimony could have been found by a reasonable jury to mean that she did not voluntarily consent to have Houston's managers Anton and Marano see the Spec-Tator. The jury could well have inferred that the manner and means used by Anton, as St. Jean's boss, to ask her for her private password would have given Anton knowledge that the access was not authorized. This Court does not substitute its own judgment for that of the jury, but we rather evaluate the issue based on the correct legal standard stated in *Lightning Lube*, 4 F.3d at 1166. In addition, St. Jean testified that she was not informed that Marano would further convey her personal log-in information to other members of Houston's management. Nor was St. Jean informed that Anton, Marano or others would repeatedly access the site. No evidence was presented that St. Jean was asked for authorization for such repeated use of her password to access the Spec-Tator nor was she asked for "blanket" authorization for access. The jury's

---

"intentional wrongdoing in the sense of an evil minded act." The jury was asked to reach a determination on these issues only if they had found Defendant liable on the statutory counts.

11

inference from such evidence that Houston's acted maliciously was neither unreasonable nor a miscarriage of justice.

Defendant's argument that the jury's verdict concerning punitive damages was internally inconsistent, thereby compelling a new trial, is unpersuasive. The jury found that Houston's conduct was malicious, but not wanton or willful. Defendant argues that this calls into question the jury's determination that the conduct was malicious. On the contrary, the jury's decision indicates attentive evaluation of the evidence presented and careful reasoning throughout the deliberative process. By consent of the parties, the jury was presented with two predicate questions necessary to determine whether any punitive damages were appropriate. The jury was not asked for any amount of punitive damages because a prior stipulation between the parties had determined the amount of punitive damages that would be awarded if they jury answered "yes" to either of the predicate questions. That the jurors answered only one of those questions in the affirmative does not discredit their reasoning. Moreover, the Court will not grant a new trial on the issue of punitive damages.[6]

The parties' stipulation to a modest amount of punitive damages if either predicate question was answered in the affirmative does not cry out as unjust. In light of the small sum of punitive damages agreed by stipulation and looking at the evidence presented at trial in its entirety, together with the reasonable inferences that the jury could draw from that evidence, this Court cannot say that there was insufficient evidence to support the jury's answer to the predicate

---

[6] The parties waived the right to argue about the amount of a punitive damages award by stipulating that any such award would be four times the amount of compensatory damages awarded. Defendant also waived its right to challenge Plaintiffs' failure to present evidence of Houston's ability to pay an award of punitive damages by refusing to turn over documents pertaining to this issue, a point which counsel for Defendant conceded during the proceedings and which resulted in the stipulation of a modest sum of punitive damages if either of the predicate questions was answered "yes."

question that led to the stipulated amount of punitive damages.

### IV.     Conclusion

For the reasons set forth in this Opinion, the Court denies Defendant's motion for judgment as a matter of law pursuant to Fed. R. Civ. P. 50(b) or, in the alternative, for a new trial pursuant to Fed. R. Civ. P. 59.  An appropriate Order will issue.


                                            **/s/ Faith S. Hochberg**

                                            Hon. Faith S. Hochberg, U.S.D.J.